BAMMA BAUCUM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20085.   Promulgated November 7, 1929.

*Walter E. Barton, Esq.*, for the petitioner.
*Brice Toole, Esq.*, for the respondent.

VAN FOSSAN: The first issue is whether or not the petitioner is entitled, under the provisions of section 214 (10) of the Revenue Act of 1921, to deduct an allowance for depletion from the sum of $43,000 received by her as consideration for the conveyance of 75 per cent of her retained royalty interest. If she is entitled to such deduction, admittedly there is no income tax payable on said sum.

The petitioner argues that the courts of Louisiana, in which State the oil property is located, have held that grants of the right to drill for oil and reduce it to possession when found, are not sales of the oil in place but are leases. (Citing *Frost-Johnson Lumber Co.* v. *Heirs of Stallings*, 150 La. 756; 91 So. 207; *Reeves* v. *Gulf Refining Co.*, 135 La. 178; 62 So. 623; *Strother* v. *Manghan*, 138 La. 437; 70 So. 426; *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190; and other cases.) The petitioner further argues that the grants of fractional parts of the retained royalty interest were subleases and that therefore the amount received by her as the consideration for such grants was rent from which she is entitled to deduct a proper allowance for depletion under section 214 (10).

It is, of course, well settled that in Louisiana instruments of the character of the grants now under discussion are not sales of soil *in situ*. Nevertheless, we are of the opinion that the instruments in question effected such a sale of property that the profit from the transaction is taxable under the provisions of section 202 of the

Revenue Act of 1921. The petitioner sold the right to receive royalties. The facts are essentially the same as those involved in the case of *Anna Taylor*, 3 B. T. A. 1201. In the *Taylor* case and in this proceeding, the oil property was situated in Claiborne Parish, Louisiana, and in both cases the petitioners conveyed fractional parts of retained royalty interests. In the *Taylor* case we held that such a conveyance is the sale of property—not the sale of oil in place, but the sale of " the right to receive royalties on oil recovered." In the *Taylor* case we said:

Section 214 of the Revenue Act of 1921, which allows a deduction to taxpayers for the depletion of oil based on discovery value, except in so far as such a deduction reduces the basis, is not applicable to determine gain or loss from the sale of property. The only basis recognized for determining gain or loss, is the cost or the March 1, 1913, value of property. Discovery value has no connection or relation to such a basis. * * *

We are, therefore, of the opinion that the transaction now in question was the sale of property, the profit from which is taxable under section 202 of the Revenue Act of 1921. It is not contended in the present proceeding that the right to drill for oil had any value on March 1, 1913. Therefore, since the land was acquired by the petitioner prior to March 1, 1913, under the provisions of section 202 the entire amount of $43,000 received as consideration for the transfer of a fractional part of the petitioner's retained royalty interest is taxable gain.

The question whether the said sum of $43,000 was revenue belonging to the conjugal partnership or community must be answered in the affirmative. The facts show that from the time petitioner's farm was inherited by her in 1906, her husband administered it, farmed it until he leased it to a tenant, collected the acquets and gains and applied the proceeds thereof to the purposes of the conjugal partnership. After the discovery of oil in the neighborhood of the farm, the husband negotiated leases to the oil companies, received and deposited the proceeds thereof in bank, sold a fractional part of the retained royalty interest, collected the consideration thereof and spent it as if it were his own, without interference or objection on the part of the petitioner. There is not a scintilla of evidence that in so doing the husband was acting as his wife's agent with respect to her paraphernal property. On the contrary, it is shown conclusively that in administering the farming operations and the oil property the husband was acting as head of the conjugal partnership. These facts clearly bring the case within the provisions of articles 2385 and 2386 of the Louisiana Civil Code. Article 2385 provides as follows:

The paraphernal property, which is not administered by the wife separately and alone, is considered to be under the management of the husband.

Article 2386 provides, in part, as follows:

When the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or the result of labor, belong to the conjugal partnership, if there exists a community of gains.

In other words, where there is a community of acquets and gains, the fruits and income of the wife's paraphernal property administered by her husband, belong to the conjugal partnership or community. *Fleitas* v. *Richardson*, 147 U. S. 550. Article 2399 of the Louisiana Civil Code provides that every marriage contracted in the state " superinduces of right partnership or community of acquets or gains, 'if there be' no stipulation to the contrary." There was no " stipulation to the contrary " between the petitioner and her husband. It follows, in our opinion, that the sum of $43,000 which was gain from the sale of a portion of the petitioner's retained royalty interest, was revenue belonging to the community consisting of the petitioner and her husband. *Reddick* v. *White*, 46 La. 1206; 15 So. 487; *Succession of Sangpiei*, 114 La. 767; 38 So. 554; *Peters* v. *Klein*, 161 La. 664; 119 So. 349; *In re Lynch*, 3 Fed. (2d) 82.

In Louisiana a wife's half interest in community property is not a mere expectancy during marriage, but is vested in her the moment the property is acquired by the community or by the spouses jointly, even though it be acquired in the name of only one of them. *Phillips* v. *Phillips*, 160 La. 814; 107 So. 584; *Zemurray* v. *United States*, 64 Ct. Cls. 657. Under the provisions of article 2414 of the Louisiana Civil Code, however, the husband is the head and master of the community of gains and as such he administers its effects, disposes of the revenue which they produce, and may alienate them by an onerous title, without the consent of his wife. The petitioner's husband administered the proceeds of the sale of the fractional part of the retained royalty interests. Had he elected to make a joint return for himself and the petitioner or had he reported in his individual tax return for the year 1922 the proceeds of the sale as income received by him, he would have been liable for the total amount of tax payable and in that event the husband and wife would not be permitted to make individual amended returns by which each would be charged with the receipt of half of the proceeds of the sale and the resulting tax thereon. Section 223, Act of 1921; section 1212, Act of 1926; *R. Downes, Jr.*, 5 B. T. A. 1029; *Joe R. Miller*, 6 B. T. A. 94; *Zemurray* v. *United States*, *supra*. In this case, however, the petitioner and not her husband reported the whole of the income received from the sale of the fractional part of the royalty interests in question. Although she had a vested interest in half of the proceeds of the sale, she had no interest in the other half. The other half

belonged to her husband under the state law applicable to the marital community and should have been returned by him. Petitioner having filed a separate return accounting for the entire sum is entitled to have her income reduced by an amount equal to one-half of the net proceeds of the sale.

With respect to the petitioner's claim for a reduction of one-half of the " loss " on the automobile used for the business of the community, it is admitted that during 1922 the car was used by petitioner's family as well as for the business of the conjugal partnership. This use was estimated not to exceed 10 per cent of the total use thereof. We believe the evidence fairly establishes that the major part of the depreciation of the car was due to its trips to the oil fields. We consequently allow a total deduction of $2,000 to cover depreciation of the car, one-half of which may be deducted by petitioner.

The sum of $3,300 which was paid by petitioner's husband as commissions for procuring buyers of a portion of her retained royalty interest should be deducted from the sale price to ascertain the net profit on the sale.

Reviewed by the Board.

*Decision will be entered under Rule 50.*