## TURBEVILLE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8036.

Circuit Court of Appeals, Fifth Circuit.

June 10, 1936.

John B. King, of Wichita Falls, Tex., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., John G. Remey and Sewall Key, Sp. Assts. to Atty. Gen., and Herman Oliphant, Gen. Counsel, Department of Treasury, and De Witt M. Evans, Sp. Atty., Bureau of In-

ternal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

In an opinion reported in 31 B.T.A. 283, the Board of Tax Appeals considered and disposed of a series of questions raised on Mrs. Turbeville's appeal from the findings of the Commissioner. The only complaint made here is of its ruling in affirmance of the Commissioner's determination that bonuses and royalties received from plaintiff's separate property were in their entirety her income and taxable to her. Petitioner in her brief thus states the matter for decision:

"The case presents the following questions:

"First, whether by virtue of the contract [between her and her husband] one half of the profits derived from the sale of leases and royalties received thereunder vested in petitioner, and the other half of such profits vested in her husband and should be so taxed; or whether these profits in their entirety were the income of and taxable to petitioner.

"Second, whether the bonuses and royalties were fructus industriales and therefore community property."

The facts were stipulated. Their substance is set out in the opinion of the Board. As they bear upon the question for determination here they lend themselves to the briefest statement.

The bonuses and royalties in question were bonuses and royalties received from oil and gas leases, some sixty-four in number, negotiated by petitioner's husband on her Coppermine Ranch. This ranch, the community property of petitioner and her former husband, S. M. Cowan, is petitioner's separate property. At the time of her marriage to Mr. Turbeville on April 19, 1919, and at her instance and request, because of her lack of business experience, she and Turbeville agreed that he would manage and control the properties belonging to petitioner and her children, including ranches and cattle, along with and as if they were his own, he having several large tracts of land and being actively engaged in the cattle and ranching business. In consideration of his doing so it was agreed that the revenues derived from the operation of the joint properties should belong one-half to her and one-half to her husband.

In October, 1921, petitioner, her husband, and her sons formed a partnership for the purpose of engaging in the ranching and cattle business. Petitioner and her husband Turbeville owned one half and her sons the other half. Under this agreement a ranch was purchased for a down payment and large deferred payments. After the purchase of the ranch a severe decline in the prices of cattle and land set in, continuing until 1925, making it very difficult for Mr. Turbeville to handle the situation. The entire burden of managing the property of petitioner and her children and the affairs of this partnership resting upon him, it was agreed between petitioner and her husband as a means to save her property, and in consideration of his labor and efforts, that all income and revenue from whatever source should be and it was considered community income and used by him in discharging community obligations, and carrying on the businesses in which the two were engaged. Beginning in 1925 and running through 1929, Turbeville undertook to and did secure the development of the Coppermine Ranch for oil, and under his direction petitioner made the leases in question. The moneys received from bonuses and royalties were received by the husband and placed to his credit in banks under the pre-existing agreement that in consideration of the services of Turbeville to manage, look after, and control the properties of both and to secure oil development on them, all royalties, revenues, and bonuses should belong equally to petitioner and him.

The Board, citing Stephens v. Stephens (Tex.Civ.App.) 292 S.W. 290; Evans v. Purinton, 12 Tex.Civ.App. 158, 34 S.W. 350; Ferguson v. Commissioner (C.C.A.) 45 F.(2d) 573, and taking a position just the opposite of that it had taken in Baucum v. Commissioner, 17 B.T.A. 1312, reversed Lucas v. Baucum (C.C.A.) 50 F.(2d) 806, found and held that there was no merit in petitioner's point that bonuses and royalties from the leases she signed were fructus industriales, that is, rents and revenues created by the working of her husband on her property and therefore community in nature. It found and held, too, that the agreement the two had made amounted to no more than an effort by agreement to convert into community property receipts which in law were separate,

and that under the law of Texas this could not be done. It found, therefore, that the effect of the agreement was, at most, to assign future income, and that this would be ineffective to relieve petitioner as the recipient of the bonuses and royalties, from the taxes due on their account. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Saenger v. Commissioner (C.C.A.) 69 F.(2d) 631.

Petitioner insists that the Board was wrong in both respects. She argues that in the light of her agreement and of the facts to which it relates, what was received from the leasing of her property as bonuses and royalties was not merely the proceeds of its sale and conversion, but the result also of the efforts and contribution of her husband in such sense as that these fruits are to be regarded not as her separate, but as their community, property. She argues, too, that the Earl and Saenger Cases the Board relies on do not fit this case, for the effect of the agreement here was not merely to assign future earnings from her property, but to apportion between the elements earning the part to which each element was entitled. That, in short, the arrangement must be looked at as what the parties intended it to be, a partnership as the result of the activities of which one-half of the amounts received were received from her property, the other half from her husband's efforts, citing Fordyce v. Helvering (C.C.A.) 78 F.(2d) 525.

■ We think the view the Board took of their arrangement was the correct one and entirely in accord with the real facts. Boiled down, what the parties were trying to do was to change the rule of property in Texas that bonuses and royalties from leases on the wife's separate property are her separate property, by an agreement that because of Turbeville's acting for her in negotiating the leases these receipts when obtained should be regarded as community property, one-half attributable to his management, one-half to her ownership. This will not do. Kellett v. Trice, 95 Tex. 160, 66 S.W. 51; Blair v. Stewart (C.C.A.) 49 F.(2d) 257. Enlarged as the power of a married woman over her separate property has been by statute since 1913 (see Vernon's Ann.Civ. St.Tex. art. 4613 et seq.), Ladonio-Dennis-Jones v. Hope Fertilizer Co. (Tex. Civ.App.) 40 S.W.(2d) 956, it has not been enlarged to the point where by a mere agreement with her husband, she can change the character or nature of her rights and interest in her property from that prescribed by law. Cauble v. Beaver-Electra Refining Co., 115 Tex. 1, 274 S.W. 120.

■ Whatever the situation as to other matters which were brought under the management contract, as to bonuses and leases the only substantial element of value which entered into them was the value of the property as oil land. Petitioner had a right to pay her husband for looking after the sales any kind or amount of compensation she wished to, but she would be paying it to him not out of what they both, but out of what she, received. He had created no part of the proceeds which came in. They came in and were depletable in petitioner's favor as the owner of an interest in the oil. They did not come in as one-half hers, and depletable as to that half because of her interest in the oil, one-half the husband's and undepletable as to that half because attributable not to an interest in oil property, but to the husband's services in negotiating the leases. They came in as all hers, her separate property, because the proceeds of the sale and conversion of her separate property. Lucus v. Baucum, supra.

■ For the same reason there is nothing in the point that these receipts were fractus industriales, the result of the husband's labor on the wife's property. There was no working of the land, no production from it, by the husband. The only thing he did was to sell the property and receive the proceeds. It would be a straining after an unreality having no counterpart in the facts to hold that anything occurred here but a leasing of petitioner's property under an agreement between petitioner and her husband that he should have one half of the proceeds when and as received.

The order of the Board is affirmed.