Francis A. Parker, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 6387. Promulgated May 7, 1946.

*Allan H. W. Higgins, Esq.*, for the petitioner.
*J. T. Haslam, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The first question presented for our decision in the instant case is whether a partnership existed between the petitioner and his wife, residents of the Commonwealth of Massachusetts, during the years 1940 and 1941, within the meaning of the Federal statutes. The

applicable statutes are printed in the margin.[1]  We think the question must be answered in the affirmative and that the partnership and the members thereof complied in every respect, in both the taxable years, with the statutes printed in the margin.  Respondent in his brief lays great stress on the fact that under the laws of Massachusetts a husband and wife can not legally be partners.  He cites us to chapter 209 of the General Laws of Massachusetts, section 2 of which reads:

A married woman may make contracts, oral and written, sealed and unsealed, in the same manner as if she were sole, except that she shall not be authorized hereby to make contracts with her husband.

Respondent seems to overlook that his own regulations point out that the Federal law has its own definition of partnership and that, in determining whether a partnership exists for income tax purposes, state law is not controlling.  See the sections of Regulations 111 printed in the margin.[2]

In some prior cases we have had this question as to how the income of a business carried on by husband and wife in Massachusetts shall be taxed.  In *Warren MacPherson*, 19 B. T. A. 651, we had an issue

---

[1] SEC. 3797 [I. R. C.].  DEFINITIONS.
   (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatable with the intent thereof—

   *       *       *       *       *       *       *

   (2) PARTNERSHIP AND PARTNER.—The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation ; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

SEC. 187.  PARTNERSHIP RETURNS.
   Every partnership shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the net income if distributed and the amount of the distributive share of each individual.  The return shall be sworn to by any one of the partners.

[2] SEC. 29.3797-1 [Regulations 111].  *Classification of taxables.*—For the purpose of taxation the Internal Revenue Code makes its own classification and prescribes its own standards of classification.  Local law is of no importance in this connection.  Thus, a trust may be classed as a trust or as an association (and, therefore, as a corporation), depending upon its nature or its activities.  (See section 29.3797-3.)  The term "partnership" is not limited to the common law meaning of partnership, but is broader in its scope and includes groups not commonly called partnerships.  (See section 29.3797-4.)  The term "corporation" is not limited to the artificial entity usually known as a corporation, but includes also an association, a trust classed as an association because of its nature or its activities, a joint-stock company, an insurance company, and certain kinds of partnerships.  (See sections 29.3797-2 and 29.3797-4.)  The definitions, terms, and classifications, as set forth in section 3797, shall have the same respective meaning and scope in these regulations.

   *       *       *       *       *       *       *

   SEC. 29.3797-4.  *Partnerships.*—The Internal Revenue Code provides its own concept of a partnership.  Under the term "partnership" it includes not only a partnership as known at common law, but, as well, a syndicate, group, pool, joint venture, or other unincorporated organization which carries on any business, financial operation, or venture, and which is not, within the meaning of the Code, a trust, estate, or corporation.  *  *  *

similar to the one we have here to decide and, in deciding it in favor of the taxpayer, among other things, we said:

Since we are concerned only with the income of the petitioner [husband], it is not necessary to decide whether the amounts in question were the income of the wife and taxable to her. The evidence is clear that the petitioner was the owner of no more than a 30 per cent interest * * *. This contention is also supported by the partnership agreement. Whether valid or not for the purpose of effecting a partnership under the laws of Massachusetts, that instrument is evidence of the relative interest of the parties thereto. * * *

As the petitioner owned only 30 per cent * * * it follows that he is taxable only on that proportion of the distributable net profits thereof unless under the laws of Massachusetts income from property separately owned by the wife is taxable to the husband. As far back as 1842, Massachusetts began to modify and alleviate the harsh rules of the common law which govern the property relations of husband and wife. * * *

* * * we are of the opinion that the petitioner is taxable * * * on only 30 per cent of the distributive profits * * *.

In *Anna E. Riley*, 29 B. T. A. 160; petition for review dismissed, 70 Fed. (2d) 1013, we laid down what seems to be the correct rule in such cases coming up from Massachusetts. In that case, among other things, we said:

The disability of the husband and wife to contract with one another is for the protection of the wife. * * * To put them on a par with contracts tainted with fraud or prohibited by positive law as being morally or economically vicious would be logically indefensible. Certainly the protection afforded the wife by the law was not meant to deprive her of the right of protecting her interest in the property or hamper her in the proper conduct of her business. Where contracts of this character have become fully executed and no fraud is apparent, it is the policy of the law not to disturb them. In such cases both this Board and the courts have recognized such contracts and given effect to the rights of the parties which have been fixed thereby. See *Hamilton* v. *Commissioner*, 24 Fed. (2d) 668; *Pugh* v. *United States*, 48 Fed. (2d) 600; *J. W. Brackman*, 24 B. T. A. 259; *Lewis E. Tifft*, 25 B. T. A. 986; *Warren MacPherson*, 19 B. T. A. 651; *Elizabeth M. Coombs*, 25 B. T. A. 1320; *L. F. Sunlin*, 6 B. T. A. 1232.

Respondent in his brief lays great stress on *Tenney* v. *Commissioner*, 120 Fed. (2d) 421, which reversed a memorandum opinion of the Board. We think the facts of that case clearly distinguish it from the instant case. In the *Tenney* case the wife entered into an agreement with her husband whereby she was to supply capital for stock market operations. All capital, so supplied, was to remain her property and losses as well as profits derived from capital gains were to be apportioned equally. The wife retained the right to all dividends and income from the capital. Her husband was to advise as to the purchase or sale of stocks and bonds, but she was not required to follow his advice. A net capital gain for the year was realized, and the Commissioner held all the gain to be income to the wife. The Board of Tax Appeals held only one-half of it to be income to the wife. The court, in reversing our decision, among other things, said:

In the case at bar the profit of $36,384.72 represented net capital gains realized upon the sale of securities *owned by the taxpayer alone*. Legally, the whole gain accrued to the taxpayer, and any claim which Mr. Tenney might have to a share in the profits necessarily rests upon the unenforceable agreement between himself and his wife. The whole of the gain is taxable to Mrs. Tenney. *Turbeville* v. *Commissioner*, 84 F. 2d 307. See *Lucas* v. *Earl*, 281 U. S. 111, *Burnet* v. *Leinenger*, 285 U. S. 136. [Italics supplied.]

In the instant case we have no question of capital gains resulting from the sale of stocks which were owned entirely by one of the spouses. Here we have the question of the taxability of profits from a business jointly carried on by the husband and wife, and where both the husband and the wife devoted all of their time to the business and the parties had agreed between themselves as to the proportion of profits which each should receive. The proportion of 80 percent to petitioner and 20 percent to Mrs. Parker agreed upon between them seems to be entirely fair and reasonable. We see no reason whatever that we should disturb it.

To the extent that Mrs. Parker received profits from the business carried on by herself and husband, they are under Massachusetts law her own property and consequently are taxable to her under Federal law, even though it be conceded she might have no enforceable right of action against her husband to collect them had she not received them. The point is that she did receive her part of the profits from this business operated jointly by herself and husband; she used these profits as she pleased; and she paid taxes on them. We think she acted correctly under the statutes printed in the margin and that petitioner is not taxable on his wife's share of the profits under the authorities which we have cited above.

The Supreme Court recently decided two husband and wife partnership cases, *Commissioner* v. *Tower*, 327 U. S. 280, and *Lusthaus* v. *Commissioner*, 327 U. S. 293. These cases were decided after briefs were filed in the instant case and, therefore, have not been discussed by the parties in their briefs. It, of course, goes without saying that, if the Supreme Court's decisions in the *Tower* and *Lusthaus* cases have in effect overruled such cases as *Warren MacPherson, supra*, upon which petitioner relies, then we must follow these decisions of the Supreme Court and not our own prior decisions. We do not think, however, that there is anything in either of these two recent decisions of the Supreme Court which overrules our decision in *Warren MacPherson, supra*, and the other cases which we have cited above.

In *Commissioner* v. *Tower, supra*, the Supreme Court, after stating the determination of the Commissioner and the applicable statutes, stated that the basic question to be decided was:

* * * Was the income attributed to the wife as a partner income from a partnership for which she alone was liable in her "individual capacity," as pro-

vided by 26 U. S. C. §§ 181 and 182, or did the husband, despite the claimed partnership actually create the right to receive and enjoy the benefit of the income, so as to make it taxable to him under Sections 11 and 22 (a) ?

That is the same question we have here to decide. In the *Tower* case, the Supreme Court decided the issue against the taxpayer upon the strength of certain findings of fact which had been made by the Tax Court. In making its decision, the Court pointed out that in the case it had been conceded that the wife had contributed no services to the alleged partnership, but did contend she had made a capital contribution of funds which had been given to her by her husband. The Tax Court had found against this latter contention and the Supreme Court ruled that its findings were amply supported by evidence. In its opinion the Supreme Court quoted the following as an accepted definition of a partnership:

> * * * A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is a community of interest in the profits and losses. * * *

Tested by the foregoing definition, we think petitioner and his wife were clearly carrying on a business partnership in the two taxable years which we have before us. The Supreme Court in the *Tower* case took pains to point out:

> There can be no question that a wife and husband may, under certain circumstances, become partners for tax, as for other purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U. S. C. §§ 181, 182. * * *

In the instant case Mrs. Parker undoubtedly brought some of her own individual capital into the business and it remained in the business. Just how much, the evidence does not clearly show. Cf. *Felix Zukaitis*, 3 T. C. 814. But even if it be assumed that the evidence does not show that Mrs. Parker made any substantial contribution of capital to the business, yet it is perfectly clear that she did, to use the language of the Supreme Court in the *Tower* case, "substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things." In our findings of fact we have found that the nature of Mrs. Parker's services to the business included answering the telephone, handling the correspondence, securing orders from customers who came into the store or telephoned in, writing up orders, shipping material from the inventory on hand, invoicing sales of materials and purchases of materials from manufacturers to replenish the business inventory, taking care of orders obtained by the other salesmen, including petitioner, making a record of all checks received in payment of sales,

depositing them in a joint bank account in the names of herself and Parker, drawing checks to pay bills of the partnership, handling customers' complaints on shipments and deliveries, discussing business matters directly with the various manufacturers by telephone, and handling all matters of Government priorities on goods sold by the firm.

The performance of the foregoing duties took all of Mrs. Parker's time during working hours and, therefore, the partnership had full-time service from her. Petitioner and Mrs. Parker both testified at the hearing, and we think the foregoing findings are fully justified by their testimony, which was not shaken on cross-examination. There is no evidence to the contrary and there is no evidence from which we would be justified in making contrary inferences. Therefore, we think, applying the tests applied by the Supreme Court in the *Tower* case, we must decide the main issue in favor of the petitioner. The Supreme Court's decision in *Lusthaus* v. *Commissioner, supra*, was to the same effect as its decision in the *Tower* case, the Court pointing out that the issue was the same and the facts, in effect, the same. Therefore, we do not enter upon any separate discussion of the *Lusthaus* case, deeming that unnecessary.

### Deduction of Attorney Fees.

The second issue concerns the disallowance of $1,450 attorney fees paid out by the partnership in 1941 to the law firm of Goodwin, Procter & Hoar for services rendered. The nature of these services has been detailed in our findings of fact. Respondent cites in support of his contention *Motion Pictures Capital Corporation*, 32 B. T. A. 339; affd., 80 Fed. (2d) 872. In that case the legal fees which the taxpayer corporation paid to its attorneys were for their services in consummating a merger between two corporations, and we held that such expenditures were capital expenditures and not deductible as ordinary and necessary business expenses. The situation is different here. The partnership was deliberating in 1941 as to whether it would change from a partnership to a corporation; also consideration was given as to admitting the salesman, Ellis, into either the partnership or the corporation. It was finally decided, after weighing the advice of counsel, not to change the form of the business from a partnership to a corporation, and it was also decided not to take Ellis into the business as a partner. For their services in giving advice on these matters and for making out the partnership income tax return, the partnership paid to the attorneys in 1941 the $1,450 in question. We think the expenditure is deductible as an ordinary and necessary business expense by the partnership. See *Doernbecher Manufacturing Co.*, 30 B. T. A. 973. In that case the taxpayer paid out $9,902.58 in

1929 to a committee as its part of the expenses of appraisers and auditors for their services in connection with a proposed merger with other corporations, which plan was abandoned in the taxable year. On the facts in that case we allowed the expenditure as an ordinary and necessary business expense. We think that under the same reasoning we must allow the deduction here. We can not see where it was a capital expenditure, as respondent seems to contend; nor do we think it was a personal expenditure. It had nothing to do with filing the individual income tax returns of petitioner and his wife. The evidence shows that they each paid $25 to the same firm of lawyers for preparing their income tax returns and that these amounts were in no way included in the $1,450 in question. Also, neither petitioner nor his wife deducted the $25 which each paid for the preparation of his individual income tax return. It is true that the $1,450 attorney fee included payment to the law firm for making out the partnership income tax return as one of the services performed, but this was clearly a business expense of the partnership and is properly deductible. See Mertens Law of Federal Income Taxation, sec. 25.40, vol. 4, and cases there cited.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HARRON, *J.*, dissenting: The majority view is founded upon a conception of the facts which, I am reluctant to observe, appears to be a misconception of the evidence. Many of the facts found are, to me, irrelevant to the question at issue, while the emphasis which I think should be given to some facts is not given. If the Circuit Courts are powerless to substitute their inferences for the ones we make from the evidence, no advantage would follow from any extended discussion by dissenting members of this Court of the reasons why the facts should have been found otherwise. If this were all there were to the instant case, it would be sufficient to note merely dissent. But a fundamental error of law permeates the whole of the majority opinion, which necessitates a somewhat detailed discussion.

Ever since *Lucas* v. *Earl*, 281 U. S. 111, it has been the cardinal rule in our tax law that earned income is taxable solely to the person who earns the income. So firmly is the principle entrenched that, regardless of the methods available to taxpayers to deflect the tax on income other than earned income by anticipatory assignments, the taxpayer who earns his income in the form of commissions paid for personal services performed has no avenue of escape. *Helvering* v. *Eubank*, 311 U. S. 122. Until the present decision, we too have kept

the doors closed. See, e. g., *Clarence L. Fox*, 5 T. C. 242, 245, 249; *William G. Harvey*, 6 T. C. 653. But just as this Court failed to appreciate the far reaching effect of *Lucas* v. *Earl* in the *Harmon* case (1 T. C. 40) as applied to an elective community property system, and was reversed for it (323 U. S. 44), so the present decision must surely be overturned on appeal.

From the facts as found by the majority, we see that during the taxable years petitioner was the representative of four machine tool manufacturers, selling strictly on a commission basis. He traveled most of the time and the machines which he sold as the factory representative by contact with customers were billed and delivered direct to the purchaser by the manufacturer. Petitioner was then credited with commissions on the sales. The business of the alleged partnership is held to have been these sales of machines on commission by "the petitioner" (alone) and the sale of tools and machine parts out of inventory stock kept in a room in the home of petitioner and his wife. The majority opinion makes no specific finding of fact that of the gross income reported by petitioner on partnership forms, more than 92 percent in 1940 and 94 percent in 1941 [1] represented commissions earned solely by petitioner on his sales of machines. Yet the record demands such finding of fact. Even under the findings as made, we see that the sales of tools and machine parts out of stock from the home amounted to only $10,000 or $11,000 in each of the taxable years, and that the value of the inventory kept on hand varied between $100 and $7,000. Yet the returns for 1940 and 1941 revealed ordinary net income in the respective amounts of $116,681.85 and $133,841.17. Hence, out of yearly net income of well over $100,000, less than 10 percent only can possibly be attributed to the sales out of the stock at the home.

Although there is a most strong suggestion in the record that petitioner actually conducted two businesses, one consisting of his selling of the machines on commission and the other of the sale of tools and parts from the home, I appreciate that it is the function of this Court, in this case the majority, to determine whether separate transactions shall be integrated for tax purposes into one transaction or retain their separate identity. *Dobson* v. *Commissioner*, 320 U. S. 489. Nevertheless, I can not conceive that a traveling salesman, which is really what petitioner was, can reallocate for tax purposes to his wife the commissions earned as a result of his personal efforts, by the formation of a partnership which directs less than 10 percent of its activities

[1] On the returns filed for 1940 and 1941, gross receipts from the business in the respective years were reported as $135,406 and $193,242; and the ordinary net income was computed to be $116,681 and $133,841. Arithmetically, $11,000 is about 8 percent of the 1940 gross receipts from the business, and 6 percent of the 1941 gross receipts.

into channels capable of being run as a husband-wife partnership. For it is patent on the face of the findings of the majority that the wife contributed no capital to the "selling on commission" phase of the business, which required none, nor did she contribute to the control and management of petitioner's personal contact with his customers or otherwise perform services vital in the production of the commissions earned by petitioner, to meet the tests laid down by the *Tower* and *Lusthaus* cases. Amplifying, but not changing the majority's findings, we see that, as to the commission sales phase of the business, the wife, experienced in stenography, took dictation from petitioner over the week-ends when he was at home, typed the dictation during the week, typed and photostated the order forms which petitioner sent to the factories to place orders for machines which he sold, checked to see that War Production Board priority forms were attached to the orders, answered the telephone, and handled correspondence. The shipping of material from inventory at hand and the invoicing sales of materials and purchases of materials from manufacturers to replenish the inventory, obviously can refer only to the 10 percent "sales from the home" phase of the business, since the machine tools petitioner sold on commission were billed and delivered direct to the customer by the manufacturer. The findings do not specify whether the orders the wife secured from customers who telephoned in or who came to the store at the house related to the sales of tools and parts from the home, or to the machine tools which petitioner was selling on the road. So, too, with the "taking care of orders obtained by the other salesman." But even if some of petitioner's machine tool customers phoned in an order or came to the house to place an order, which is very unlikely, the fact that the wife was there to take it makes her no more a partner than the typical clerk or secretary. The services she rendered were rendered *to petitioner* and were not "vital" within the meaning of the *Tower* case to the earning of his commission income. At most, the value of the wife's services were a business expense incurred in petitioner's earning his commissions and we could no doubt estimate such "expense" and allow petitioner a deduction therefor. See *Max German*, 2 T. C. 474.

I must admit also that I have grave doubts as to the answer given by the majority opinion to the respondent's argument that no valid partnership could exist between petitioner and his wife under Massachusetts law. It is, of course, true that for purposes of taxation Congress is not limited by the conception of a partnership entertained under state law. See *Burke-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110. The mere fact, therefore, that the state recognizes the validity for local purposes of the husband-wife partnership does not mean, as shown by the *Tower* case, that the partnership must be rec-

ognized for tax purposes. But the converse is not necessarily true. If under state law a wife can not contract and be a partner with her husband, to the extent her "partnership" contribution consists of services performed, as here, she would not be entitled to the distributive share of the profits fixed in the partnership agreement, but only, if anything, to a *quantum meruit* for the reasonable value of her services. The revenue acts would be then guided by the property rights of the parties. See *Morgan* v. *Commissioner*, 309 U. S. 78. Under chapter 209, section 2, of the General Laws of Massachusetts a married woman is not authorized to enter into a partnership with her husband. In *Edgerly* v. *Equitable Life Assurance Society*, 191 N. E. 415, 417, the Supreme Judicial Court of Massachusetts pointed out that "There is nothing in the uniform partnership statute as adopted by this commonwealth * * * which changed the previously existing law with respect to the incapacity of a married woman to make a contract a partnership with her husband." Respondent has not cited this case.

In conclusion, the facts that no written partnership agreement was executed, the partnership was conducted in petitioner's own name, and the inability under Massachusetts law for a husband and wife to enter into a valid enforceable partnership make the present arrangement questionable, to say the least. But if a partnership exists here which can be recognized for tax purposes, I can not see how the partnership income can include anything more than the $10,000 or $11,000 of gross income derived from the sales of tools and parts out of stock kept in the home. The 80–20 percent allocation procedure specified in the "agreement," therefore, could only apply to this income, and petitioner would be taxed in full on all the commissions which he earned on his sales of machine tools as the representative of the four machine tool manufacturers.

OPPER, *J.*, agrees with this dissent.