J. W. Pickelsimer v. Commissioner.
J. W. Pickelsimer v. Commissioner
Docket No. 4456.
United States Tax Court
1948 Tax Ct. Memo LEXIS 246; 7 T.C.M. (CCH) 111; T.C.M. (RIA) 48026; February 26, 1948
*246 Petitioner and his wife went into the plumbing business in Atlanta in 1922 with their joint savings up to that time as their capital. The business was later enlarged to include heating and repair work. Petitioner has always devoted full time to the business. His wife devoted full time until 1936 when she became ill and from then until some time in 1940 she was less active in the business. In August, 1940, petitioner was offered a government contract in Florida. At that time his wife had recovered her health. Petitioner went to Florida and was asked to bid on a much larger contract. He called his wife and asked her if she would come to Florida and join him in the venture and devote full time to it. She agreed. The large contract was obtained and was financed by transferring $10,000 from the Atlanta business and borrowing $25,000 from the bank on the joint credit of petitioner and his wife. Both these sums were repaid before 1941 and thereafter the Florida operations were entirely financed from the profits of the joint venture. In January, 1941, petitioner and his wife entered into a formal partnership agreement to share their profits of the entire business, both in Atlanta and in *247 Florida, equally between them. From August, 1940, until the end of the year petitioner's wife performed vital services in the Florida end of the business and in 1941 she performed vital services in both Atlanta and Florida, devoting her full time thereto. Held, petitioner and his wife conducted the Florida end of the business in 1940 as a joint venture and the entire business in 1941 as a partnership and the petitioner is taxable only on one-half of the profits from the joint venture and on one-half of the profits from the partnership. Allen W. Clapp, Esq., and Alex P. Gaines, Esq., for the petitioner. Bernard D. Hathcock, Esq., and N. A. Townsend, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax determined by the respondent against petitioner for the taxable years ended December 31, 1940 and 1941 in the amounts of $31,967.33 and $34,399.99, respectively. The above deficiencies are due entirely to the inclusion in income as "Income from business" for 1940 and 1941 of $49,615.90 and $52,543.85, respectively. In a statement attached to the deficiency notice the respondent explained the said adjustment to net income for 1940 as follows: "(a) It is held that the entire income of the business conducted under the firm name of Buckhead Plumbing and Heating Company at Atlanta, Georgia, and at Jacksonville, Florida, in the amount of $120,437.10 is taxable to you. Your income has, accordingly, been increased in the amount of $49,615.90, since you reported in your return only the amount of $70,821.20. Section 22 (a) of the Internal Revenue Code." A like explanation *249 was made of the said adjustment to net income for 1941 except as to the amounts involved. For that year the respondent determined that $104,000.34 was taxable to petitioner, which was an increase of $52,543.85 over the $51,456.49 reported by petitioner on his return. By an appropriate assignment of error petitioner contests the two above-mentioned adjustments to net income. Some of the facts were stipulated and others were developed by oral testimony and exhibits introduced in evidence. Findings of Fact The facts as stipulated are so found. John W. Pickelsimer, hereinafter sometimes referred to as "petitioner" is an individual with an office in Atlanta, Georgia. The returns for the years in question were filed with the collector for the district of Florida. India T. Pickelsimer, hereinafter sometimes referred to as "Mrs. Pickelsimer" is the wife of petitioner. They were married in 1920 in Florida and came directly to Atlanta, Georgia. At the time of their marriage Mrs. Pickelsimer was a registered nurse. Petitioner had had very little shooling. He had only attended school about three months a year from age seven to age 17. At the time petitioner and Mrs. Pickelsimer were *250 married he was working as a journeyman plumber He started as a plumber in 1916. He later became a registered plumber and continued that occupation until September 6, 1922. After petitioner and Mrs. Pickelsimer were married the latter took in some fancy sewing. On September 6, 1922, petitioner and Mrs. Pickelsimer went into the plumbing business for themselves with a capital of $367.91, which represented their joint savings up to that time. They, as owners of the business, began operating under the registered name of J. W. Pickelsimer Company. At the start they had no employees. Petitioner did the work with the tools and Mrs. Pickelsimer answered the telephone, kept the records and did the office work. Both devoted full time to the business until the end of 1936, except for a few short vacations of a week at a time. About December 1936, Mrs. Pickelsimer became ill and was not physically able to continue in the business on a full time basis. Thereafter, and until August 1940, she devoted only part time to the business. After August 1940, she again devoted full time as hereinafter described. In 1928, the location of the business was moved and the registered name was changed to Buckhead *251 Plumbing and Heating Company. In 1931, the business was incorporated under the name of Buckhead Plumbing and Heating Company. On December 31, 1937, the corporation was dissolved and the business was continued under the same name of Buckhead Plumbing and Heating Company throughout the taxable years here in question. For the year 1926, petitioner filed a separate income tax return. For the years 1927 to 1930, inclusive, joint returns were filed by petitioner and his wife. During those years Mrs. Pickelsimer had no income outside of the business. There is no longer in existence any record of how the returns, if any, prior to 1926 were filed. At the beginning Mrs. Pickelsimer knew nothing of the plumbing business. Until the latter part of 1936 Mrs. Pickelsimer was responsible for the office and handled it entirely, receiving orders, collecting bills, keeping books on the contracts and managing the office in general. After three or four years of operation general contract work was undertaken as well as general servicing. She did the buying for the service department and petitioner did most of the buying for contracts. Prior to 1937 approximately 60 per cent of the earnings of the business *252 were made in the service department. As the result of years of experience Mrs. Pickelsimer became thoroughly familiar with the office end of the plumbing business. She was depended upon for waiting on the customers and for all of the records. She learned to tell one fitting from another, to take orders for repairs over the telephone, to see that they were taken care of promptly, to price out job tickets, help in the estimating, which included going over the blue-prints, learning the location of the fixtures and the size of the building, the number and kind of fixtures, kind of trim, faucets, supplies, traps and the kind of pipe. These she determined from the specifications. This involved determining where the sewerage went, kind of water meter, who furnished it, and the cost. She knew all of the fixtures that were kept in stock by their technical names, what they were used for and could furnish them to any workmen requiring them. She ordered practically all of the repair stock and took care of about 300 service calls a month. She was able to determine what a layman wanted when he ordered some plumbing supplies by being able to visualize the possible use he had in mind. She handled *253 all the repair end of the business, did as much estimating as petitioner and did some of the buying on the contract work. She handled the complaints on service work and was in charge of placing the various men on the jobs, entering the orders on job cards. She made up lists of materials for jobs and took surveys off for lists of materials if the job was to be let on competitive bidding, all of which is vitally necessary to the plumbing business as the inside workings govern the outside in the construction of a job. Her participation in this was observed both by employees in the business and persons on the outside. Employees treated Mrs. Pickelsimer as having the same authority as petitioner, she employing some of the help, making all bank deposits, signing a great many of the checks and having charge of the service department. While the work in Florida as hereinafter described was going on in 1940, plumbing supply salesmen observed her reading blue prints and taking off quantities, and dealt with Mrs. Pickelsimer as freely as with petitioner. Over the period of years Mrs. Pickelsimer contributed greatly to the building up of the business. At the time the business was incorporated *254 in 1931, the corporation issued 99 shares of stock to petitioner and one share of stock to Mrs. Pickelsimer. Notwithstanding the manner in which the stock was issued petitioner and his wife had an understanding between them that they were still equal owners of the business because of the manner in which she had helped to build up the business with him. During the existence of the corporation salaries were paid as follows: J. W.
India T.
Year
Pickelsimer
Pickelsimer
1931
$2,400
$1,250.00
1932
1,200
1,300.00
1933
2,400
1,516.67
1934
2,400
1,846.50
1935
4,000
2,163.00
1936
3,900
2,132.00
1937
5,000
1,300.00
The corporation was dissolved in 1937. Since Mrs. Pickelsimer had devoted full time to the business for nearly 14 years and part time for two additional years petitioner considered that his wife was entitled to a half interest in certain real estate which had been acquired and, to partly compensate her for her work through the previous years, he transferred on January 1, 1939 a certain store building, which building was occupied by Buckhead Plumbing and Heating Company for the most part, and also in part by Buckhead Auto Stores and Crescent *255 Market. Mrs. Pickelsimer put the deed in the safe deposit box and did not have it recorded as she did not regard recording as necessary. No documentary stamps were placed on the deed. Mrs. Pickelsimer did not regard the deed as a gift but as an accumulation of earnings over the period of years. Thereafter Mrs. Pickelsimer collected the rentals. This real estate had been bought in petitioner's name in 1928 for $3,000 in cash and an assumption of a $14,000 mortgage. In 1939 there was a $30,000 loan on it and the equity above that was regarded as about $16,000. The deed was actually delivered to Mrs. Pickelsimer on January 1, 1939. It had been used as one of the assets for the basis upon which the financing of Buckhead Plumbing and Heating Company was arranged. Petitioner took out $30,000 additional life insurance to protect the mortgage. Beginning with 1939 Mrs. Pickelsimer reported these rents on her individual returns, reporting $5,055.60 for net rents in 1939 and $4,631.84 net rentals in 1940. In August of 1940 petitioner was awarded a plumbing contract at the Naval Air Station in Jacksonville, Florida. At that time his wife had recovered her health. He took one Burk to Florida *256 intending for him to handle this job under petitioner's supervision but shortly thereafter a big heating job came up including 69 barrack houses and mess hall for the Naval Air Station. Burk had never figured a heating job and petitioner informed the Navy that he did not desire to bid on this job. Upon being urged to do so, however, he telephoned Mrs. Pickelsimer in Atlanta and explained the circumstances, including the fact that Burk was practically of no help. Petitioner told Mrs. Pickelsimer that they might make some money if she would put what she had into it, and come down and take over and help him like she used to do in the plumbing business. She thereupon agreed to share the responsibility of the work and the financing of the job and came down the next day, August 25, 1940. Together petitioner and his wife figured on some 6,000 radiators, 69 buildings and about 29 carloads of material, it taking about a week to figure the bid and a few days thereafter they were awarded the job. Figuring this job required considerable experience, involving a contract amount of about $422,000 with 90 days within which to complete the job. An apartment in Jacksonville was obtained for use both *257 as living quarters and as an office. There was nothing on the job when Mrs. Pickelsimer came to Florida and they had to buy all tools, work benches and all materials. Petitioner handled the construction end of it, personally supervising the actual work, and Mrs. Pickelsimer took care of the office. At the time Mrs. Pickelsimer came to Florida petitioner had received about two carloads of materials on the first contract and was just starting that work. Thereafter he and Mrs. Pickelsimer handled together both of the Florida contracts, the first being for $173,985 and the last one, the heating contract, being for $422,579.67. Both contracts were signed Buckhead Plumbing and Heating Company, J. W. Pickelsimer, Owner. All of the contracts which were bonded were signed the same way as petitioner used the same bonding company which he had used when he operated the business after the corporation was dissolved and, the bonding company's records being set up under that name, the contracts in Florida were so signed. The Florida work was financed by the transfer of $10,000 from the account of Buckhead Plumbing and Heating Company in Atlanta and the borrowing on the credit of both petitioner and *258 Mrs. Pickelsimer of an additional $25,000. About 300 men were employed on the Florida jobs. Mrs. Pickelsimer made out requisitions for payment from the Government, received and answered the mail, ordered materials, received and answered the long distance telephone calls and made up the payroll until it got too heavy where she required assistance. On September 29, 1940, petitioner wrote to W. R. Puckett in Atlanta offering him a position as assistant to Mrs. Pickelsimer at a compensation of $1,000 per month. The letter was written by petitioner and signed "J. W. Pickelsimer, Partner." Puckett was unable to accept the position and petitioner and Mrs. Pickelsimer had to carry on without him. The Florida operations and the business of Buckhead Plumbing and Heating Company in Atlanta were carried on separate books. On the Florida books there was no capital account except the borrowed money until the profits were distributed and credited, one half to petitioner's capital account and one half to Mrs. Pickelsimer's capital account. On November 20, 1940, the $10,000 transferred from Buckhead Plumbing and Heating Company, Atlanta, was repaid to the Atlanta business out of profits which had *259 been realized in Florida and on December 7, 1940, $55,450 was transferred to Atlanta. Of the latter amount $25,000 was used to repay the loan obtained by petitioner and his wife, $450 was used to pay the interest on the mortgage on real estate and $30,000 set up in a special account in the Fulton National Bank, Atlanta. The $30,000 special account was kept on the Jacksonville books and carried as a special deposit at the Jacksonville office. Roy Karshner, certified public accountant, prepared tax returns for petitioner and his wife. A partnership return was filed for 1940 showing the Florida business as a joint venture. Individual returns were filed for petitioner and for Mrs. Pickelsimer. Petitioner's 1940 return showed income from Buckhead Plumbing and Heating Company, Jacksonville, Florida, in the amount of $50,703.28 and income from Buckhead Plumbing and Heating Company in Atlanta in the amount of $20,117.92. This $20,117.92 was the entire net income of the Atlanta end of the business. Thus the Atlanta business was reported in 1940 as a proprietorship of J. W. Pickelsimer and the Florida business as a joint venture, with profits of the latter evenly divided between petitioner and *260 his wife. At the end of 1940 there were three sets of books involving petitioner and his wife. The first set was for Mrs. Pickelsimer alone. It recorded the dealings with the previously mentioned property that had been transferred to her by petitioner on January 1, 1939. In this set of books Mrs. Pickelsimer's capital account after closing as of December 31, 1940, stood at $20,242.38. The second set was for the Atlanta business of the Buckhead Plumbing and Heating Company. In this set of books petitioner's capital account after closing as of December 31, 1940, stood at $62,448.64. The third set was for the Florida business of the Buckhead Plumbing and Heating Company. In this set of books petitioner and his wife each had a capital account after closing as of December 31, 1940, of $50,703.28. On January 1, 1941, petitioner and his wife agreed to conduct both the business in Florida and the business in Atlanta as a partnership. Petitioner wrote out in long hand a penciled agreement containing "The articles of copartnership entered into this January 1, 1941" which was signed by both himself and his wife. He used a form book for this purpose. At that time the above-mentioned three *261 sets of books had not been closed so the exact amount of the capital account or accounts in each set of books was not known. In paragraph 4 of the penciled agreement it was provided: 4. The capital of said firm shall consist of not less than $50,000 which shall be invested as follows: J. W. Pickelsimer not less than
$25,000
Mrs. India T. Pickelsimer not less than
25,000
After the above-mentioned three sets of books had been closed as of December 31, 1940, and the exact amount of the capital accounts was known, paragraph 4 of the penciled partnership agreement was revised and the entire agreement was typed and signed to read as follows: "AGREEMENT "The ARTICLES OF COPARTNERSHIP entered into this January 1, 1941, by and between J. W. Pickelsimer and Mrs. India T. Pickelsimer of Atlanta, Georgia, WITNESSETH; "1. The name of said copartnership shall be Buckhead Plumbing and Heating Company. "2. The principal office and place of business of said firm shall be in Atlanta, Georgia; branches may be established elsewhere in or out of the State. "3. The purpose of said firm shall be that of carrying on a regular plumbing and heating business, retail or wholesale, *262 with the right to engage in plumbing and heating contracting. "4. The capital of said firm shall consist of $82,691.02 which shall be invested as follows: J. W. Pickelsimer
$41,345.51
Mrs. India T. Pickelsimer
41,345.51
"5. Each partner shall give such time and attention to the affairs of said business as required, and shall engage in no other business or undertaking during the continuance of this agreement. "6. This agreement shall become effective January 1, 1941, and shall bind the parties hereto for five years, at the expiration of which time, it shall be automatically renewed for a like term. "7. The management and financial matters of the firm shall be mutually divided between the partners and each, in his or her discretion, may delegate any portion of such authority to the other partner or employees. "8. All moneys of the firm shall be deposited in convenient bank accounts, subject to withdrawals only by the check of the firm, signed with the firm name, followed by the name of the partner or employee so authorized to sign. "9. The amounts partners may withdraw from the business shall be within the discretion of the partners, and all amounts so *263 withdrawn shall be charged against the individual account of the partner withdrawing the same. "10. Books of account shall be kept, and at the end of each fiscal year a statement shall be prepared showing the net profits for such year, and such profits shall be divided one-half to each partner. Partners' profit not withdrawn at the end of each year shall be transferred to the respective partners' capital accounts. "11. In the event of dissolution on account of death, expiration of term, or other cause, the parties hereto bind themselves that the partnership affairs shall be settled under the direction and according to the statements od a certified public accountant. "IN WITNESS WHEREOF, the parties hereto have affixed their signatures and seals the day and year above written. /S/ (L.S.) / J. W. Pickelsimer /S/ (L.S.) / Mrs. India T. Pickelsimer (Seal) Attest: JAMES B. HINSON NOTARY /S/ PUBLIC Jas. B. Hinson STATE OF GEORGIA AT LARGE" The capital accounts of petitioner and his wife appearing on the third set of books as of December 31, 1940, of $50,703.28 each were not mentioned in the above agreement. The capital provided for in the agreement was the sum of capital *264 accounts of Mrs. Pickelsimer and petitioner appearing on the above-mentioned first and second set of books, respectively. In order to equalize the capital accounts of petitioner and his wife as of January 1, 1941, there was transferred from petitioner's capital account to Mrs. Pickelsimer's capital account the amount of $21,103.13, as follows: Mrs.
Pickel-
Peti-
simer
tioner
Capital accounts as of De-
cember 31, 1940 appearing
in first and second set of
books
$20,242.38
$62,448.64
Amount transferred to Mrs.
Pickelsimer's account
from petitioner's account
21,103.13
21,103.13
Capital accounts as of Jan-
uary 1, 1941 as stated in
the partnership agree-
ment
$41,345.51
$41,345.51
For the year 1941, two sets of books were kept, one for the business at Atlanta and one for the business in Florida. The capital accounts of petitioner and his wife appearing on these books as of the beginning and end of the year 1941, were as follows: Atlanta Books
Florida Books
Capital Accounts
Petitioner
His Wife
Petitioner
His Wife
As of January 1, 1941
$41,345.51
$41,345.51
$50,703.28
$50,703.28
Profit for year 1941
26,547.91
26,547.89
27,529.08
27,529.07
Total
67,893.42
67,893.40
78,232.36
78,232.35
Drawings during 1941
78,478.49
68,442.57
13,386.34
13,611.34
Balance
(10,585.07)
(549.17)
64,846.02
64,621.01
Deposits in Building and Loan Asso-
ciations in name of petitioner and
his wife set up on books
50,000.00
50,000.00
None
None
Capital as of December 31, 1941
$39,414.93
$49,450.83
$64,846.02
$64,621.01
*265 Included in the above profit for 1941 as shown on the Atlanta books was a profit of $28,265.84 on the Lawson Hospital job in Atlanta. It took $160,000 of funds to finance this job. These funds were obtained from the following sources: From the previously mentioned special
account in the Fulton National Bank
$ 30,000
From an account called "Florida Regu-
lar Account"
100,000
From the Atlanta general bank account
30,000
$160,000
In repaying the funds used for financing the Lawson Hospital job the entire $160,000 was deposited in the Atlanta general bank account. In addition to continuing work on the Florida contracts and the Lawson Hospital job, the Buckhead Plumbing and Heating Company in 1941 handled the Herndon Homes Project, the Grady Homes Project, the Westinghouse job, and later estimated the Conley job, although work did not start on the latter until 1942. Petitioner and Mrs. Pickelsimer remained working in Florida the first part of 1941 and returned to Atlanta about the middle of the year, and during the remainder of the year spent most of their time in Atlanta. Mrs. Pickelsimer continued her part in the management of the business after they *266 returned from Florida, helping prepare estimates, take off quantities, figure bids, and discussing with petitioner problems of the business. In addition to the work in Atlanta the Buckhead Plumbing and Heating Company was given work described as "fee work" to handle for contractors for the Navy on a fee basis of three per cent. This work was handled the same way as contract jobs taken by the Buckhead Plumbing and Heating Company, using the same organization, the same tools and both petitioner and Mrs. Pickelsimer handled the management. A partnership return was filed for 1941 covering the Florida operations only. Individual returns were filed for Mrs. Pickelsimer and petitioner. To each of these individual returns was attached a schedule reflecting the income from rents and from the operations of the business in Atlanta, which was divided one half to petitioner and one half to Mrs. Pickelsimer. Separate sets of books were kept for the Florida work and for the Atlanta operations of the business and the accountant believed the above method of handling would be less confusing than two partnership returns. All of the income of the Florida and Atlanta operations of the Buckhead Plumbing *267 and Heating Company for the year 1941 was thus equally reported by petitioner and his wife on their individual income tax returns for that year. Mrs. Pickelsimer's capital account was closed out on her books as of January 1, 1941, and was set up on the Atlanta books of the Buckhead Plumbing and Heating Company as of January 1, 1941. The business carried on by petitioner and his wife in Florida during the latter half of 1940 under the name of Buckhead Plumbing and Heating Company constituted a joint venture and the income therefrom is taxable one half to petitioner and one half to his wife. The business carried on by petitioner and his wife in Florida and Georgia during the year 1941 under the name of Buckhead Plumbing and Heating Company constituted a valid partnership and the income therefrom is taxable one half to petitioner and one half to his wife. Opinion BLACK, Judge: The respondent determined that petitioner is taxable upon the entire net income of the Buckhead Plumbing and Heating Company for the calendar years 1940 and 1941. Petitioner concedes that for the calendar year 1940 he is taxable upon the net income of the Buckhead Plumbing and Heating Company earned in Atlanta. *268 He so reported that net income as being taxable to him and has assigned no error in regard to such income. He contends, however, that the net income of the Buckhead Plumbing and Heating Company earned in Florida during the latter half of 1940 and the entire net income of the Buckhead Plumbing and Heating Company earned both in Atlanta and in Florida during 1941, are taxable one half to himself and one half to his wife on the ground that the business done in Florida during the latter half of 1940 under the name of Buckhead Plumbing and Heating Company was a joint venture between himself and his wife and that all of the business done during 1941 under the name of Buckhead Plumbing and Heating Company, both in Atlanta and in Florida, was a valid partnership in which he and his wife were equal partners. The applicable provisions of the Internal Revenue Code are in the margin. [1] The respondent relies upon section 22; the petitioner upon sections 182 and 3797. *269 In Commissioner v. Tower, 327 U.S. 280, the Supreme Court, among other things, said: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. Int. Rev. Code §§ 181, 182. * * *" In the instant proceeding the evidence shows that Mrs. Pickelsimer did all of the things mentioned in the above quotation from the Supreme Court's opinion. It is not necessary in this proceeding to decide whether a partnership existed between petitioner and his wife prior to the year 1940. We do not have any of those prior years before us. We need only decide whether they operated the Florida business in 1940 as a "joint venture" which under section 3797 of the Internal Revenue Code, supra, is included within the term "partnership," and whether they operated both the Florida *270 and Atlanta businesses in 1941 as a valid partnership between husband and wife. When petitioner called Mrs. Pickelsimer on the telephone from Florida in August, 1940, he told her they might make some money if she would put in everything she had and come down to Florida and take over like she used to do in Atlanta. She agreed to do so. Mrs. Pickelsimer went to Florida the next day. She and petitioner spent the first week figuring on a bid which resulted in the award of the $422,000 contract. The Florida work was financed by the transfer of $10,000 from the Atlanta business and the borrowing on the credit of both petitioner and Mrs. Pickelsimer of an additional $25,000 from the Atlanta bank. During the remainder of 1940 Mrs. Pickelsimer devoted her full time to the Florida business, the details of which are all set out in our findings of fact. By the end of 1940, petitioner and his wife had returned the $10,000 that had been transferred from the Atlanta business and had paid off in full the $25,000 note at the bank. Upon the basis of all the evidence, we hold that the business carried on by petitioner and his wife in Florida during the latter half of 1940 amounted to a joint venture *271 between them and that petitioner is taxable on only one half of the profits from that venture. Cf. Reuben Stiefel, 9 T.C. 576. At the close of 1940 the Florida work was substantially completed and with new jobs of considerable magnitude coming up in Atlanta, petitioner and his wife decided to put all of their assets together and operate the entire business, both the Florida end and the Atlanta end, as one partnership. Mrs. Pickelsimer had fully regained her health and petitioner found that her services were indispensable. A partnership agreement was drawn by the parties by copying an agreement out of a form book. It was executed on or about January 1, 1941, in pencil showing a total investment in the proposed partnership of $50,000. Some time later, however, after the auditor had completed his audit for the year 1940, petitioner caused $21,103.13 to be transferred from his capital account to his wife's capital account as of January 1, 1941, and the penciled partnership agreement was then revised to show an investment in the partnership of $41,345.51 each by petitioner and his wife after which the agreement was typed and signed. Mrs. Pickelsimer continued to render vital *272 services, remaining in Florida with petitioner for the first part of the year and then coming to Atlanta where new jobs were under way. Witnesses testified that she participated as much as petitioner in determining policies of the business, in estimating bids and in general conduct of the management of the business, except in actual conduct of work on the job. She continued to be in charge of the office. During 1941 separate records were kept for Florida and for the Atlanta end of the business and this practice was continued until the Florida contracts were completed. The respondent contends that the record as a whole proves that the alleged joint venture and partnership arrangements between petitioner and his wife were noting more than devices designed for tax avoidance because of high profits. We shall not endeavor to discuss minutely his contentions along this line. A large number of witnesses testified in this proceeding and from their testimony and certain documentary exhibits we have found the facts to be as set out in our findings. We believe that these facts fully support petitioner's contentions that a joint venture existed between him and Mrs. Pickelsimer covering the Florida *273 operations in 1940 and that a full partnership existed between him and Mrs. Pickelsimer for 1941 covering operations, both in Florida and Atlanta, and that he is taxable on only one half of the Florida profits in 1940 and on only one half of the Atlanta and Florida profits in 1941 and we so find and hold. Cf. Leo Marks, 6 T.C. 659; Francis A. Parker, 6 T.C. 974; Samuel Goodman, 6 T.C. 987; Reuben Stiefel, supra.See I.T. 3845, Internal Revenue Cumulative Bulletin 1947-1, page 66. We may also say that this is not a case where the wife rendered no important vital services to the partnership as in the case of Claire L. Canfield, 7 T.C. 944 and where we held that an allocation of income between husband and wife had to be made different from that provided in the partnership agreement, where both contributed to capital and the wife contributed no services to the partnership but the husband gave all of his time to the business. The instant case is more similar to Reuben Stiefel, supra, where we distinguished the Canfield case and, among other things, said: "* * * They both contributed vital services to the *274 partnership. Under these circumstances, we are thoroughly satisfied that the partnership was bona fide and we find no necessity or justification for rearranging or modifying the terms of the partnership agreement or altering the partnership interests for tax purpose. In this respect the instant case differs from Claire L. Canfield, 7 T.C. 944, where we found that the partnership agreement lacked the necessary reality to determine by its terms the taxability of the income earned. * * *" Decision will be entered under Rule 50. Footnotes
1. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * * * *
SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - * * *
(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183 (b). * * *
SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.↩