WILLIS B. ANDERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4423. Promulgated May 6, 1946.

*Edgar W. Pugh, Esq.*, and *J. Emmett Tunney, Esq.*, for the petitioner.
*A. J. Friedman, Esq.*, for the respondent.

958

OPINION.

VAN FOSSAN, *Judge*: The principal issue before us is whether the petitioner and his wife were equal partners in the conduct and operation of the Standard Die Cast Die Co. during 1941 and hence are entitled to divide its net profits for that year equally between them for income tax purposes. The respondent has determined that the petitioner was the sole owner of the company during 1941 and that, in consequence, its earnings for that year are taxable to him in their entirety.

The Supreme Court, in the recent case of *Commissioner* v. *Tower*, 327 U. S. 280, stated the rule to be applied as follows:

* * * When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended

to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their agreement, considered as a whole, and by "their conduct in execution of its provisions." *Drennen* v. *London Assurance Company*, 113 U. S. 51, 56; *Cox* v. *Hickman*, 8 H. L. Cas. 268. We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes. * * *

The facts show that the petitioner, who has been in the machine tool and die business all his adult life, began in 1938 in a small way to buy junked machinery in Detroit. The machinery so purchased was originally set up in the basement of his home. Mrs. Anderson helped her husband to put the machines in working order by cleaning, scraping, and painting them. After the petitioner had started in the die business, she operated a shaper and drill press and performed various other duties.

In 1939 the petitioner entered successively into two short-lived partnerships for the manufacture of molds and machinery for die casting and plastics. After this dissolution he entered business under the name of Standard Die Cast Die Co., filing, as an individual, a certificate of doing business under an assumed name.

The company did not prosper, due in part to the seasonal nature of the business. By late summer of 1940 the work for the year was finished, the machinery was mortgaged, and the petitioner was without funds. At that time the petitioner's wife, on her own initiative, borrowed $1,000 from her mother, which she agreed to invest in the business, provided the petitioner would abandon his die-making activities and would enter the machining business. She insisted also that the interest in the business which she had considered to be hers since its inception should be evidenced by a written agreement. This was agreed to by the petitioner. The money so invested was used to buy parts, repair, and put into condition used and run-down machines. Some of these machines were sold and other productive machines were purchased with the proceeds.

In the last week of 1940 the petitioner and his wife executed an agreement of partnership effective January 1, 1941, under the terms of which they agreed to share equally in the ownership of the company and in its profits and debts and liabilities.

Under the facts here present, the partnership agreement was sufficient to evidence in Mrs. Anderson an equal interest in the business. The conduct of the parties in execution thereof showed a real intention that she should be a partner.

Although the existence of a partnership was not disclosed to the company's customers nor to others, this conduct was explained by the fact that petitioner had been advised by a lawyer that the laws of Michigan did not permit a contract of general partnership between husband and wife. Furthermore, it has been decided in numerous cases

that a bona fide partnership between husband and wife will be recognized under the Federal revenue laws despite provisions of state law to the contrary. See *Felix Zukaitis*, 3 T. C. 814; *L. F. Sunlin*, 6 B. T. A. 1232; *Earle L. Crossman*, 10 B. T. A. 238; *Albert Kahn*, 14 B. T. A. 125; *R. E. Wing*, 17 B. T. A. 1028.

The evidence shows that the petitioner's wife contributed both capital and services to the business. We have observed that prior to 1941, when they were reconditioning junked machines, she aided in cleaning and painting the machines and preparing them for use and, later, operated a shaper and drill press. During the taxable year she took care of the office, doing the letter writing, filing, matching the shippers' and receivers' invoices, telephone work, purchasing, and general office work. She also figured the pay roll.

There is nothing in the record to suggest that the partnership was a mere device for tax avoidance because of high profits. In fact, in the summer of 1940 the business had reached a low ebb. The petitioner was without funds and had no orders for machine work, the work which later produced the large profits here involved. It is uncontradicted that the suggestion that a written partnership agreement be entered into originated with Mrs. Anderson, who insisted on it as a condition of her investing her money in the business. She also insisted on confining the operations to the work of machining parts.

It appears clearly also that the petitioner's wife exercised complete dominion and control over the share of profits credited to her. Between January 1, 1941, and July 31, 1945, out of a total of $255,501.39 credited to her account, she withdrew a total of $213,692.87. The amounts so withdrawn, other than those paid to the collector of internal revenue, were expended by her in part for personal items, such as antiques, in part for the purchase of property jointly with the petitioner or in her own name, and the rest for other purposes, including the repayment of the loan to her mother and gifts to the children. The household and family expenses were paid by the petitioner.

The respondent, in support of his contention that there was no partnership, points to the fact that no entry was made in the company's books until 1942 to show that Mrs. Anderson had a capital or partnership interest in the business. In this case the books are entitled to little or no weight in determining the issue before us. Prior to 1942 the books were kept very informally. The petitioner testified that he knew nothing about books and was unable to keep a set of books himself. The accountant, Dunnett, who audited and revised the books in the fall of 1942, testified that he found them "in a very deplorable condition." The books had contained salary accounts for the petitioner and his wife and a "withdrawal" account for an employee.

The respondent further asserts that the net income of the business was earned primarily by the personal services of the petitioner. He states that the contribution of $1,000 by the petitioner's wife must have been a negligible factor in the production of the large profits of the company.

We do not agree. While the petitioner's services were doubtlessly an important factor in the earning of the income, it is clear that capital played an equally important role. The business of the company was the making of tools and parts for guns, tanks, etc., which required a substantial outlay for machinery and labor. On March 31, 1941, the company had 41 employees and on June 30 of the same year it had 88. On the partnership return for 1941 the sum of $57,637.04 was deducted for the cost of labor and supplies. The importance of Mrs. Anderson's contribution is emphasized when considered in the light of the circumstances surrounding it. At the time, the petitioner was in the die business and was "practically broke." That the business was not prospering is shown by the fact that in the previous year Willmore had sold his 50 percent interest in the business to the petitioner for $846. It was Mrs. Anderson's suggestion that they go into the machining business and it was her contribution of $1,000 which provided the capital necessary to convert to that type of activity. The rapid expansion of the business thereafter may largely be attributed to the acceleration of the national war program. It appears from the books also that subsequent to 1941 Mrs. Anderson made an additional investment of $13,000 in the business, presumably from earned profits. The case in this respect is not unlike *Humphreys* v. *Commissioner*, 88 Fed. (2d) 430, where the court said:

* * * Though the present case is one where the services of Humphreys and Day contributed to the earnings of the firm, the capital furnished by their wives was what started the business, and this and the additional capital which they later contributed helped to furnish the moneys necessary to conduct it. * * *

See also *Felix Zukaitis, supra.*

Since we are of the opinion that the petitioner and his wife, in a very real sense, intended to, and did carry on the business as partners during 1941, it follows that the petitioner is taxable upon only one-half of the income of the company for that year.

The other issue involves the reasonableness of the salary paid to Walter Anderson in 1941. Of the amount of $16,293.11 which was claimed on the partnership return as a deduction, the respondent disallowed $4,293.11 and determined that $12,000 constitutes reasonable compensation for Walter Anderson for 1941.

The respondent must be sustained for lack of proof. The only evidence in the record to show the nature and value of the services is the petitioner's testimony that Walter Anderson was directly under him

in the factory and had the responsibility of all the men, the operation and completion of the jobs. From such a sketchy and general discription of the duties, it is impossible for us to determine that the services of Walter Anderson had a value greater than that placed upon them by the respondent. On the record his allowance appears reasonable and in the absence of further proof we must sustain his determination.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

Opper, *J.*, dissenting: There is nothing new about the situation typified by this proceeding. In my opinion, petitioner and his wife under the circumstances which the evidence here discloses were not "carrying on business in partnership" (sec. 181, I. R. C.), and never intended to do so. Even before the decisions in *Lusthaus* v. *Commissioner*, 327 U. S. 293, and *Commissioner* v. *Tower*, 327 U. S. 280, the principles governing such situations had become adequately established. See, e. g., *Lewis Hall Singletary*, 5 T. C. 365; *Clarence L. Fox*, 5 T. C. 242; *W. M. Mauldin*, 5 T. C. 743.

*Commissioner* v. *Tower*, *supra*, is quoted in part in the present opinion to the effect that the intention of the parties "is a question of fact, to be determined from testimony disclosed by their agreement, considered as a whole, and by 'their conduct in execution of its provisions.'" The present petitioner's wife obtained a loan from her mother of $1,000. She received a half interest in a business treated by the parties as worth upwards of $10,000, and the firm's accounts show her capital account to have been opened with a credit of $5,458.47, the origin of which is unexplained. The earnings credited to her account were used to buy property in the joint names of petitioner and herself, to pay a premium on insurance on petitioner's life, for payment of the wife's income tax, and gifts to the children. There is no evidence that any considerable sum was disposed of in a manner different from what it would have been had the husband continued to be in name, as he was in fact, the sole proprietor of the business.

The wife rendered services which could hardly have been of the managerial or "vital" nature described in *Commissioner* v. *Tower*, *supra*, and *Lusthaus* v. *Commissioner*, *supra*. Part of them are designated as "similar errands." She was a housewife with two children, and a third was born within a month of the execution of the "partnership agreement." She had no household servants. The value of her contribution seems extravagantly measured by the salary which was

actually set up on the books in her favor in the amount of $49.50 a week. Petitioner's brother, who performed highly responsible services, was paid only $16,000, and even the reasonableness of that amount is denied in the present opinion; yet the wife's share for one year is upwards of $20,000.

The partnership agreement, which is in the highest degree ambiguous and provides that petitioner and his wife "shall share all the profits," without specifying the proportions, goes on to provide that "each shall be entitled to any and all net profits." And to make clear the family nature of the transaction an arrangement based on survivorship is included. During all of the year in issue the existence of the partnership was undisclosed. Petitioner's certificate of doing business as a sole proprietorship was unchanged. Employer's tax returns and even a chattel mortgage on the business property were signed only by petitioner as owner. It seems to me difficult in the extreme to find evidence in the record which warrants the conclusion that, as evidenced by the conduct of the enterprise, there was any actual or intended carrying on of this business in partnership.

As in *W. M. Mauldin, supra,* "the agreement to divide the profits according to the supposed shares in the capital of the enterprise," coupled with the devotion of petitioner's full time and effort to the business and the necessarily negligible participation by the wife, "leads inevitably to the result that some—undisclosed—part of the earnings from [his] labor was being enjoyed by the wife—a contrivance which has long been viewed as inadmissible in dealing with the proper allocation of income tax burdens. *Lucas* v. *Earl,* 281 U. S. 111."

TURNER, SMITH, MURDOCK, and HARRON, *JJ.,* agree with this dissent.