OPINION. Johnson, Judge: Petitioner assails the Commissioner’s determination that he is taxable on the incomes reported in 1942 and 1943 by his wife as her share of partnership profits. He contends primarily that the partnership was recognizable for tax purposes, contrary /to the Commissioner’s finding that “no partnership existed,” and, in the alternative, that regardless of the partnership agreement his wife was the equitable owner of a half interest in the inventions and hence entitled to a half of the proceeds derived from them. He contends further that such proceeds should be taxed as long term gain from the disposition of capital assets held over six months. The respondent minimizes the value of the wife’s assistance in experiments, arguing that she contributed no capital, performed no vital services, and had no control over or participation in the business, so that the alleged partnership was nothing more than an anticipatory arrangement for division of future income, which, under Lucas v. Earl, 281 U. S. 111, is ineffective for tax purposes. It seems clear that the wife had no control over the business and took no part in negotiations or agreements with Smit, and no patents, patent applications, or contracts bore her name. There is evidence that in 1932 at least $500 of funds originating with her were deposited in a joint account used to some undisclosed extent for the purchase of experimental equipment, but, as the account was also used for general family expenses, we perceive no sufficient connection to consider any part of such funds as an intentional contribution to a business. Experiments with milk valves, begun in 1933, were discontinued in 1934, and petitioner’s work on abrasive wheels did not begin until 1936. But even if the wife exercised no control and contributed no cash capital, she may still be deemed a partner if she rendered services vital to the business. Commissioner v. Tower, 327 U. S. 280; Lusthaus v. Commissioner, 327 U. S. 293. Respondent, stressing that Smit’s payments were for inventions and services, argues forcefully that in 1942 and 1943 no business was carried on by the partnership. This statement is not literally true, in that the B-bond wheel was subjected to durability tests during the early part of 1942 and patents were assigned to Smit. Throughout both years petitioner rendered engineering advice pursuant to the agreement, but this service could not be deemed a partnership function, and petitioner does not so contend. It is apparent, however, that except in a relatively minor degree the wife rendered no services in 1942 and 1943. But to sustain the determination on this ground would oversimplify the issue. The evidence is convincing and we have found that in the development of the wheel-making processes her services were substantial and vital. With constancy, application, and alert care, she devoted over a period of years her time and attention to the meticulous production of hundreds of experimental plugs. She acquired skill and competence in the precise weighing, mixing and heating of these plugs, in the examination of them for defects, and in the use of electric presses, and she spent hours of grinding toil in testing the durability of the wheels produced. These services were not of the kind ordinarily performed by a wife. To render them, she sacrificed her opportunities for leisure and social diversions. She devoted more time to the work than petitioner, although he admittedly supplied the technical knowledge and direction. Recognizing her right to a reward, petitioner orally assured her in 1933 and later that any benefits that might flow from their joint efforts would be equally shared, and, when the commercial success of the B-bond wheel was anticipated, he instructed an attorney to prepare a proper instrument implementing this promise. The attorney prepared the partnership agreement which was signed on May 31,1941. At that time petitioner had already assigned the metallic wheel patent to Smit, and on August 25,1941, by an instrument which in part reflected an existing understanding, he agreed to assign to Smit all inventions and the patents covering them when issued. Smit manufactured both types of wheel and agreed to pay petitioner 271/4 per cent of the annual profits of its wheel department. By the same contract petitioner agreed to render engineering advice to Smit. He did so in 1942 and 1943, receiving therefor $6,000 in 1942 by separate contract, and nothing in 1943 apart from the payments under the contract of August 25, 1941. Although this contract was not signed until after the signing of the partnership agreement, the latter, referring to its terms, purports to transfer to petitioner and his wife as partners “the aforementioned royalty agreement with J. K. Smit & Sons” and sundry tools, equipment and machinery at their home, “to vest such assets in them equally.” By a further provision petitioner assigns to his wife “an undivided equal one-half interest in said royalty agreement” and she releases him from all claims for moneys advanced and services performed. Literally, neither petitioner nor his wife contributed any rights in inventions or patents to the partnership, and this they could not do, for all such rights were conveyed, or subject to conveyance, to Smit under an oral agreement shortly thereafter reduced to writing. Bui they did contribute to the partnership, as its only substantial asset, the Smit contract, and during the taxable years this asset produced the income here in controversy. Under these circumstances the issue depends not on whether or not the wife rendered services to the partnership, but rather on whether or not the purported assignment of a half interest in the contract may properly be regarded as a capital contribution originating with her. In considering this question, we shall ignore for later discussion the effect of the provisions in the Smit agreement relating to petitioner’s personal services, and assume for present purposes that all of the consideration passing from Smit was for assignment of the invention and patent rights. In prior cases a wife’s services, no more extensive or vital to business than those here proved were vital to the inventions, have been held sufficient to warrant recognition of an alleged partnership for tax purposes, Wilson v. Commissioner (C. C. A. 7), 161 Fed. (2d) 661; Sinne B. Forsythe, 10 T. C. 417; Francis A. Parker, 6 T. C. 974; Willis B. Anderson, 6 T. C. 956. And such services rendered in years preceding a formal partnership agreement have been considered relevant as support for the decision reached, Samuel Goodman, 6 T. C. 987; Leo Marks, 6 T. C. 659; Felix Zukaitis, 3 T. C. 814, even though the wife’s services thereafter were reduced or negligible. Singletary v. Commissioner (C. C. A. 5), 155 Fed. (2d) 207. The purpose of the partnership, as stated in the agreement, is to develop by experiment improved abrasive wheels, to manufacture such wheels, and “to exploit the same.” There happened to be little or no experimenting in the taxable years, but there was very substantial income from the agreement, attributable chiefly to the inventions already developed. That was the business’, asset, and in it the wife held a one-half interest — by assignment from petitioner, it is true, but the assignment was made pursuant to his oral agreement and in recognition of services rendered. Cf. J. Kammerdiner, 25 B. T. A. 495; Carl G. Dreymann, 11 T. C. 153. Those services had been an essential factor in the development of the inventions with which the agreement was acquired, and in a very real sense the wife’s contribution to the partnership’s income-producing asset originated with her. We hold, therefore, that the Commissioner erred in failing to recognize the partnership for tax purposes. As respondent stresses, Smit’s payments were made in consideration not only of inventions, but also of services which petitioner rendered to Smit as a consultant in 1942 and 1943. We agree with the contention that the portion of the payments applicable to the services represented earned compensation, tax on which could not be shifted from the earner by any assignment or agreement. Lucas v. Earl, supra. So recognizing, petitioner concedes sole tax liability in respect of $2,600 in 1942 and $3,000 in 1943, amounts which he testified were the reasonable value of his services in the respective years. But this appraisal falls before the more persuasive evidence that in January 1942, and before the B-bond Wheel was an assured commercial success, Smit agreed by separate contract to pay petitioner $6,000 for such services in 1942. We hold that figure to be the reasonable value of the services, and in computing income of the partnership it should be deducted in each year from the total payments received from Smit and taxed to petitioner in full. In an amendment to his petition, petitioner charges error in respondent’s failure to treat the payments received from Smit as capital gains. He argues that the part of them ascribable to the inventions are sale proceeds; that the property represented by the inventions qualifies as a capital asset under section 117 (a) (1), Internal Revenue Code, and, as it was held over six months, the profit on its disposition is a long term capital gain (sec. 117 (a) (4)), of which only 50 per cent should be taken into account in computing net capital gain (sec. 117 (b)). No cost or other basis is claimed, so that under the theory advanced all proceeds received are gain. Even assuming, without deciding, that the petitioner had a capital asset, still we do not agree that petitioner or petitioner and his wife as partners had held the inventions over six months prior to sale. Smit acquired a right to them upon petitioner’s perfecting of them. Such was the oral understanding which the agreement of August 25,1941, evidenced in writing, and this understanding was reflected in Smit’s use of them prior to formal written assignment. Under such circumstances the dates of the written assignments lose their significance. There was never a time when petitioner could have disposed of them to another or withheld them from Smit without breaching the parties’ understanding. Since this is so, the payments from Smit were for inventions not held over six months, and the resulting gains were short term and recognizable 100 per cent in the computation of taxable income. Reviewed by the Court. Decision will be entered under Bule 60.