Elwyn White Tomlinson v. Commissioner. Elwyn White Tomlinson and Kate Palmour Tomlinson v. Commissioner.
Tomlinson v. Commissioner
Docket Nos. 10449, 10450.
United States Tax Court
1949 Tax Ct. Memo LEXIS 298; 8 T.C.M. (CCH) 34; T.C.M. (RIA) 49010; January 12, 1949
*298 Petitioners, husband and wife, with advice of counsel, purportedly formed a partnership which took over the assets and liabilities of a corporation of the same name. Thereafter the business was continued without material change. The wife invested no capital originating with her in the business; she made no substantial contribution to the control and management of the business; and she performed no other vital services in connection with the operation of the business. Held, the alleged partnership cannot be recognized for tax purposes and the income is taxable to the husband. Commissioner v. Tower, 327 U.S. 280, followed. At the time the alleged partnership was formed the husband transferred to his wife a 21/85ths interest therein for $21,000 which was to be paid out of a portion of her distributive share of earnings, leaving a portion thereof in the business. Held, she did not thereby invest capital originating with her upon which she can claim a fair return, distinguishing Abe Schreiber, et al. 6 T.C. 707, affirmed 160 Fed. (2d) 108. The alleged partnership kept its books and records and filed its returns on a fiscal year basis ending *299 October 31st. The petitioners kept no books of account and their tax returns were filed on a calendar year basis. Respondent, after determining that there was no partnership between husband and wife recognizable for tax purposes, adjusted the husband's returns for the taxable years to a calendar year basis. Held, respondent's adjustments approved. Petitioners omitted from the gross income reported on their 1940 joint return an amount properly includible therein which was in excess of 25 per cent of the gross income stated in their return. Held, under such circumstances the five-year period of limitations provided by section 275 (c), Internal Revenue Code, applies. John L. Westmoreland, Esq., 815 Wm. Oliver Bldg., Atlanta, Ga., John W. Stokes, Esq., 1775 Broadway, New York, N. Y., and Frederick D. Dassori, Esq., for the petitioners. Edward L. Potter, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These consolidated cases involve deficiencies for the years and in the amounts following: Docket
No.
Year
Deficiency
10449
1941
Income Tax
$73,633.69
10449
1943
Income and Victory Tax
52,469.04
10450
1940
Income Tax
69,361.09
The principal issue is whether the petitioners, husband and wife, were partners for tax purposes, in the business known as the Capital Automobile Company. Respondent determined that the business was operated by Elwyn W. Tomlinson and taxed the income to him. In determining the deficiencies respondent made various adjustments to reflect income of the business *301 on the calendar year basis instead of a fiscal year ending October 31st. The adjustments increased the taxable income of Elwyn W. Tomlinson for each of the calendar years 1940, 1941 and 1943, and decreased his taxable income for 1942. Petitioners challenge the adjustments made by respondent for the several years. Petitioners also allege that respondent's determination is erroneous in that it failed to provide a fair return to the wife on her investment. In Docket No. 10450 petitioners allege that the statute of limitations bars the deficiency determined by the respondent. Petitioners' allegation that respondent erred in determining that capital gain was realized upon liquidation of the corporation known as Capital Automobile Company is conceded by respondent. This concession will be taken into account in recomputing the deficiencies under Rule 50. Findings of Fact The petitioners, husband and wife, reside in Atlanta, Georgia. There income tax returns for the taxable years were filed with the collector of internal revenue for the district of Georgia. For the calendar year 1940 they filed a joint return. For the calendar years 1941, 1942 and 1943 they filed separate returns. Partnership *302 returns were filed by the Capital Automobile Company for the two-day period ending October 31, 1940, and for the fiscal years ending October 31, 1941, 1942 and 1943, with the collector for the district of Georgia. Elwyn W. Tomlinson entered the automobile business in 1919. Ten years later he became assistant sales manager for the Cadillac Company of Atlanta. In June 1932 he became a dealer for Cadillacs and Oldsmobiles for Motors Holding Division of General Motors Corporation. Tomlinson had no investment in the business in 1932. In 1935 the Capital Automobile Company, a Delaware corporation, was formed by Motors Holding. The new corporation had Class A and Class B stock. Motors Holding Division of General Motors Corporation controlled the new corporation by its investment in Class A stock, which was the voting stock. Tomlinson continued as dealer and president of the new corporation. Tomlinson purchased four shares of the Class B stock at $100 per share. The stock was issued in his name. The funds used to purchase such stock came from petitioners' joint checking account and represented an accumulation out of money earned by Tomlinson. His wife operated the household on a monthly *303 budget and the savings, achieved through her management, were accumulated in their joint account. Tomlinson recognized his wife's ability to take care of earnings entrusted to her. Tomlinson entered into the customery "Option Agreement" and "Bonus Agreement" with Motors Holding which provided, in part, that Class B stock could be acquired from funds received from dividends and bonuses paid by the new corporation. It was stipulated between the parties that such stock should be issued in the name of Tomlinson and that he could not transfer or encumber such stock without jeopardizing his dealership and relations with Motors Holding. From 1935 to July, 1940, Tomlinson used his dividends and bonuses to acquire additional Class B stock, all of which was taken in his name. Tomlinson requested permission from Motors Holding to transfer some of the Class B stock to his wife, but his request was refused. By July, 1940, Tomlinson had acquired the entire outstanding capital stock of Capital Automobile Company and Motors Holding had no further financial interest in the corporation. Petitioners planned from the beginning of their married life to proceed on a "fifty-fifty" basis. Their homes, *304 first on Tenth Street, then on Club Drive, and finally on Habersham Road, were jointly owned. They were precluded from joint ownership of the stock of the Capital Automobile Company by reason of the existing agreement with Motors Holding. During the period that the Class B stock was being purchased the Tomlinson family lived on his salary and money borrowed from life insurance companies and the bank. The dividends and bonuses were used to buy more Class B stock. Loans were obtained on six life insurance policies on the husband's life, in each of which the wife was beneficiary. She consented to the borrowing on the policies with the understanding, and an oral agreement with her husband, that as soon as all the stock was acquired a partnership would be formed to operate the business. Operation of the business as a partnership was discussed frequently by petitioners during the period that the Class B stock was being purchased. After the capital stock of Capital Automobile Company was acquired, petitioners discussed with their attorney the question of dissolving the corporation and the formation of a partnership. Details of the operation of the business as a partnership were discussed *305 with the attorney and with a certified public accountant. Petitioners were advised of their rights and liabilities as partners in the operation of the business. In dissolving the corporation and in organizing a new enterprise to operate the business petitioners followed the advice of counsel, who prepared the necessary papers and handled the legal matters arising in connection therewith. Pursuant to the advice of their counsel, petitioners executed a written agreement on October 30, 1940, which provided that the business would be operated "under the name and style of Capital Automobile Company for the purpose of dealing generally in new and used automobiles and in rendering service therefor," for convenience sometimes hereinafter referred to as "new company". The agreement stated that the assets of the business were contributed 43/85ths by the husband and 42/85ths by the wife. The husband was to "have the complete direction and control of the management and conduct of the business of the partnership and shall be responsible therefor." The profits were to be distributed annually "on the basis of 50% thereof to each of the partners." The provision giving the husband complete direction *306 and control of the business was written into the agreement to protect him in case of the death of his wife, who was in "just fair" health at that time. On October 30, 1940, Tomlinson delivered certificates numbered 1 to 28, inclusive, to the corporation and a new certificate, certificate No. 29, was issued by the corporation to "Elwyn Tomlinson and Kate Tomlinson doing business as Capital Automobile Company, a partnership." Certificate No. 29 was for 850 shares of Class B stock. [1]
On October 30, 1940, Tomlinson transferred an undivided 21/85ths interest in and to all of the assets of the business to his wife. Subsequently he filed a gift tax return in which he reported this transfer as a gift. On October 30, 1940, Tomlinson transferred an undivided 21/85th interest in and to all the business assets to his wife for the sum of $21,000. The wife evidenced her obligation with a five-year *307 promissory note bearing interest at four per cent. The note was secured by an undivided 30/85ths interest in the business assets. This transfer was confirmed and approved by the Superior Court of Fulton County as a fair, reasonable and just transaction between husband and wife. Payments on the note were made out of earnings as follows: $5,500 on December 23, 1940; $7,000 on April 3, 1941; $10,000 on May 8, 1941, making total payments of $22,500. On July 15, 1941, Tomlinson refunded the $1,500 overpayment. On October 30, 1940, the new enterprise opened its books of account. The capital interests of the petitioners were recorded therein as $43,000 to the husband and $42,000 to the wife, or a total of $85,000, represented by 850 shares of stock of the Capital Automobile Company, a corporation. On October 31, 1940, the Capital Automobile Company, a corporation, was formally dissolved by action of its stockholders and directors. Certificate No. 29 was turned in by the new company and cancelled by the corporation. The corporate assets were distributed to the new company. The corporate and the new company's books of account were closed on October 31, 1940. New accounts reflecting the *308 receipt of the corporate assets were opened by the new company on November 1, 1940. The profits of the new company for the two-day period October 30 and 31, 1940, in the amount of $1,895.47, were transferred proportionately to the investment accounts of the petitioners on its books. After November 1, 1940, the Capital Automobile Company opened accounts with two Atlanta banks. Each petitioner was authorized to withdraw funds from these accounts. The trade name was registered by the petitioners with the clerk of the Superior Court of Fulton County, in accordance with the laws of Georgia. The new company entered into selling agreements, on November 1, 1940, with the Oldsmobile and Cadillac Divisions of General Motors Sales Corporation for the sale of new Oldsmobile and Cadillac automobiles. Corporate leases on the real property were assigned to the new company and the obligations thereunder accepted by it as lessee. In January, 1941, new leases were executed in each of which it was stated that the alleged partnership was "composed of E. W. Tomlinson and Kate P. Tomlinson". The outstanding unpaid obligations of the corporation were assumed by the new company. The contingent liability *309 on notes endorsed with recourse by the corporation to General Motors Acceptance Corporation was also assumed by the new company. The total amount of notes so endorsed was $463,274. In April and June, 1942, "Elwyn W. Tomlinson and Kate Palmour Tomlinson operating as Capital Automobile Company" subleased a part of the real property to the United States for use by the Navy Department and the Federal Works Administration. The Federal Government, as lessee, required the signature of each petitioner on the lease instruments, as lessor. At the time of the establishment of the alleged partnership it was not contemplated that Kate P. Tomlinson would take an active part in the conduct of the business. She was physically unable to come down to the office and help in the management of the business. She discussed business policies and problems with her husband at home and kept in close touch with its progress by these discussions. Her opinion of people under consideration for employment in responsible positions was sought by Tomlinson. After the formation of the new company Kate P. Tomlinson opened her own personal checking account with the First National Bank, North Avenue, Atlanta. Her *310 husband could not withdraw funds from this account. The income which she received from the new company and her investments were deposited therein. The funds deposited in this account were used by her for investments and payments of her individual taxes. Her investments included an interest in an apartment house with her brother, some tax certificates, two new insurance policies on her husband for which she was solely liable for the premiums, war bonds, a half interest with her husband in the Habersham Road residence, and a half interest with him in an adjoining lot. She also used the income deposited in her personal account to pay off the $21,000 note above mentioned and to purchase some porch furniture her husband refused to buy. No part of the funds deposited in her account was used for household expenses except the aforesaid porch furniture. Tomlinson continued to pay the household expenses after the new company was formed, as he had done prior thereto. On October 31, 1940, the new company closed its books for the two-day period October 30 and 31, 1940. On November 1, 1940 new books of account were opened by it on the fiscal year basis ending October 31st. The new company, like *311 its corporate predecessor, submitted financial statements monthly covering its operations to the Oldsmobile and Cadillac Divisions. The corporate monthly statements carried cumulative totals on a calendar year basis. The new company's first monthly financial statement covered its November, 1940 operations and carried no cumulative totals for the calendar year. The car manufacturers combined the financial statements of its distributors or dealers and used the resulting figures as a management yardstick to determine the efficiency of its dealers' operations. Upon receipt of the new company's statement for November, the automobile manufacturers requested a cumulative financial statement on a calendar year basis for the corporation and the new company. The latter had to prepare monthly and yearly statements on the calendar and the fiscal year basis, in order to satisfy the car manufacturers and its own system of accounting. The detailed nature of the financial statements was such that the dual reports required approximately 600 extra calculations. When the accountant brought the matter to Tomlinson's attention the latter instructed the accountant to accumulate the monthly reports on a *312 calendar year basis from January 1, 1941 and that he (Tomlinson) would add his profits for the months of November and December, 1940 to the calendar year statement in ascertaining the status of the company's operations on the fiscal year basis. By October 31, 1941 the situation had changed to such an extent that thereafter, and beginning with November, 1941, the manufacturers were rendered statements on the new company's fiscal year basis. The new company's books of account and its monthly financial statements show profits for November and December, 1940 totaling $41,160.59. Petitioners' investment accounts on the books show that each was credited with a proportionate part of such profits by entries dated January 1, 1941. The profit and loss account in the new company's general ledger shows November and December, 1940 profits and the transfer of proportionate parts to the alleged partners' investment accounts by an entry dated December 31, 1940. The joint return filed by petitioners for 1940 reported a net income of $52,610.29 after deductions totaling $2,706.60. Petitioners failed to include in their 1940 net income the new company's profits for November and December, 1940 in *313 the total sum of $41,160.59. The new company's profits of $41,160.59 for November and December, 1940 constituted a part of, and should be included in, petitioners' taxable income for the calendar year 1940. The partnership return for the fiscal year 1941 reported ordinary net income of $180,991.36 which was divided equally between the petitioners as partners. Elwyn W. Tomlinson reported one-half thereof, or $90,495.68, on his individual income tax return for the calendar year 1941. In computing the deficiency for 1941 respondent increased the husband's taxable income by $107,504. This increase consisted of income from the alleged partnership in the amount of $90,495.68 reported by the wife and adjustments of $17,008.32 necessary to reflect his income on a calendar year basis. The new company's profits for November and December, 1941 totaled $58,168.91, which exceeded the profits eliminated for the same months in 1940 by $17,008.32. The partnership return for the fiscal year 1942 reported ordinary net income of $71,088.98 which was divided equally between the petitioners as partners. The husband reported one-half thereof, or $35,544.49, on his individual income tax return for the *314 calendar year 1942. In computing the income and victory tax deficiency for 1943 respondent decreased the husband's 1942 taxable income by $20,582.35. This decrease resulted from a net adjustment of $56,126.84 to reflect his income on a calendar year basis and an increase in his taxable income of $35,544.49 representing alleged partnership profits reported by his wife. The new company's profits for November and December, 1942 totaled $2,042.07. The partnership return for the fiscal year 1943 reported ordinary net income of $75,966.83 which was divided equally between the petitioners as partners. The husband reported one-half thereof, or $37,983.42 on his individual income tax return for the calendar year 1943. In computing the income and victory tax deficiency for 1943 respondent increased the husband's taxable income by $67,249.41, of which $37,983.41 was reported by his wife and $29,266 represented adjustments to reflect his income on a calendar year basis. The new company's profits for November and December, 1943 totaled $31,308.07. During the taxable years Kate P. Tomlinson contributed no capital originating with her, made no substantial contribution to the control and management *315 of the business, and performed no other services vital to the conduct of the business of the new company. The alleged partnership income reported by Kate P. Tomlinson for the several taxable years involved herein was earned by, and is taxable to, Elwyn W. Tomlinson. Petitioners' joint return for the calendar year 1940 was filed on or about March 10, 1941. It reported a gross income of $55,316.89. The deficiency notice was mailed to Elwyn W. Tomlinson on or about January 8, 1946. Opinion ARNOLD, Judge: The first question is whether the alleged partnership is to be recognized for Federal tax purposes. Petitioners contend that it was validly created under the laws of Georgia and that we can assume its validity since respondent offered no evidence to the contrary. Our question is not determinable by the laws of Georgia. Congress imposed the tax on income and it is the Federal statute that determines whether this income is individual or partnership for tax purposes. The state laws establish the rights and liabilities of the parties to each other and to third persons, but such laws are not determinative of Federal income tax liability. Commissioner v. Tower, 327 U.S. 280; *316 Lusthaus v. Commissioner, 327 U.S. 293; Helvering v. Clifford, 309 U.S. 331; Blair v. Commissioner, 300 U.S. 5; Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110. Respondent contends that none of the attributes, which the courts have decided must be present in order to recognize a family partnership for Federal income tax purposes, is present here. He quotes extensively from the Tower case, supra, and states that these consolidated cases come so clearly within the ambit of the Supreme Court's decision that it is unnecessary to enlarge upon the law therein set forth. We agree with the respondent, and the language hereinafter quoted from the Tower case could, in our opinion, have been written with the present circumstances and facts in mind: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her, or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, *317 182, 26 U.S.C.A. Int. Rev. Code, §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. [3] A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws. [Italics supplied.] The circumstances under which the present company was created show that the wife did not invest capital originating with her. In fact, she had no capital originating with her that she could invest. Petitioners argue that money saved out of the wife's household allowance became hers and that the original $400 investment in Class B stock came from such savings. However stated, the fact remains that at all times material hereto, the husband alone was earning money. The wife *318 had no separate income and she acquired no property by inheritance. Whatever she or the family had, it originated with the husband. Her consent to borrowing money on his life insurance policies is not, in our opinion, the investment of capital originating with her. All of her actions in connection with procuring the capital required to purchase the Class B stock can be attributed to the marital relationship that existed. Evidence is also lacking that the wife substantially contributed to the control and management of the company's business. Both parties requested, and we have found as a fact, that at the time the new company was established it was not contemplated that the wife would take an active part in the conduct of the business. The testimony established that she was physically unable to come to the office and help in the management of the business. The only contribution she made to the control and management of the business consisted of discussions of business policies with her husband at home and the expression of an opinion as to the employment of key personnel in the business organization. The discussions with her husband can as well be attributed to the family's welfare, *319 as to the exercise of any managerial function on her part. The expression of opinions by the wife as to the qualifications of a prospective employee may or may not have been of frequent occurrence. Tomlinson had been connected with the automobile agency for many years and it is reasonable to assume that the key men in the organization were not replaced too frequently. The evidence fails to show how many key employees were personally accepted or rejected by Kate P. Tomlinson. If her judgment was needed on many occasions, it would not have been too difficult to give us some figures or estimates. The absence of particularity as to the services contributed by Kate P. Tomlinson, plus the provision in the written agreement that her husband was to have complete direction and control of the conduct and management of the business, convinces us that the wife did not substantially contribute to the control and management of the business. Whatever classification might be made of her services, even with additional evidence, it can not be said that she substantially contributed to the conduct and management of the company. It is not contended by the petitioners that the wife rendered any services *320 other than as above discussed. If the petitioners could have pointed to other vital services performed by the wife, we are convinced that such services would not have been overlooked by their counsel. While each case must stand on its own facts, as petitioners point out, the services rendered by the wife here are not comparable to the services rendered by the wife in Paul L. Kuzmick, 11 T.C. 288, (promulgated September 16, 1948); Sinne B. Forsythe, 10 T.C. 417; Francis A. Parker, 6 T.C. 974, 982; Willis B. Anderson, 6 T.C. 956. See also Joseph J. Morrison, 11 T.C. 696, (promulgated October 26, 1948). Petitioners rely upon our decision in Davis B. Thornton, 5 T.C. 116. This case was decided prior to the Supreme Court's decisions in the Tower and Lusthaus cases, supra, and must be read accordingly. On the same day that the Thornton case was decided May 22, 1945, this Court decided Jacob DeKorse, 5 T.C. 94. In a dissenting opinion in the DeKorse case, in which four judges joined, it was pointed out that the majority opinion was in direct conflict with our opinion in the Thornton case. The DeKorse *321 case was affirmed, 158 Fed. (2d) 801, upon authority of the Tower and Lusthaus cases. Factual distinctions include a provision in the Thornton partnership agreement for sharing losses, as well as profits, whereas the Tomlinson agreement provides only for a sharing of profits, and Lucy Thornton had independent means which increased the financial standing of the partnership, whereas Kate Tomlinson provided no increased credit rating for Capital Automobile Company. In view of the foregoing, we can not agree with petitioners that the Thornton case is controlling. Turning again to the language of the Supreme Court in the Tower case, the opinion states: "A partnership is generally said to be created when persons join together their money, goods, labor or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." The petitioners say that husband and wife joined together for the purpose of conducting the business. Yet they can not say what money, what goods, what labor, or what skill the wife brought into the alleged partnership. They can not point specifically to any new capital or new service that *322 she was expected to or did bring into the business. Actually, the money, the goods, the labor and the skill which were combined to produce and earn the income originated with her husband. The legal formalities brought "about no real change in the economic relation of the husband and wife to the income in question." He controlled the business after formation of the new company exactly as he had done before. The wife was no more active in the conduct of the business after the company was formed than before its formation. The principal change to be noted after the formation of the company is that the wife drew and retained her distributive share of the income. While petitioners' treatment of the alleged partnership income is entirely consistent with the theory advocated here by them, it is equally consistent with the objectionable tax practice of reallocating family income among members of the family group. Their meticulous observance of the distributive share allocated to each is not sufficient, in our opinion, to establish that a genuine partnership, for tax purposes, was effected. We are satisfied that the husband executed all the legal formalities deemed necessary by his counsel and *323 accountant in order to make his marital partner his business partner, but we are not satisfied that she contributed, or that it was intended that she should contribute, in any material way to the business. This record, and our findings, show that the husband earned all the income in question. It is our opinion, and we hold, that the alleged partnership was used as a vehicle to reallocate a part of his earnings to his wife. Many cases have recently been decided involving the recognition or nonrecognition of family partnerships. In each case in which the family partnership has been recognized for tax purposes the courts have found that one or more of the factors listed in the Tower case are present. It is repeatedly pointed out in these cases that if the wife or other member of the family contributes capital originating with her or him, or substantially contributes to the conduct and management of the business, or otherwise performs vital additional services, or does all of these things, the family partnership is to be recognized. In each of the following cases, one or more of the factors listed in the Tower case was found to exist and the partnership was recognized: Lawton et al. v. Commissioner, 164 Fed. (2d) 380 *324 (CCA-6), reversing 6 T.C. 1093; Weizer v. Commissioner, 165 Fed. (2d) 772 (CCA-6, January, 1948); Woosley v. Commissioner, 168 Fed. (2d) 330 (CCA-6, June, 1948); Culbertson v. Commissioner, 168 Fed. (2d) 979 (CCA-5, June, 1948), certiorari granted December 6, 1948; Canfield v. Commissioner, 168 Fed. (2d) 907 (CCA-6, July, 1948); Kent v. Commissioner, 170 Fed. (2d) 131 (CCA-6, September, 1948); Hartz v. Commissioner, 170 Fed. (2d) 313 (CCA-8, October, 1948); Walsh, et al. v. Commissioner, 170 Fed. (2d) 535 (CCA-8, November, 1948); Graber v. Commissioner, 171 Fed. (2d) 32 (CCA-10, November, 1948). While there is some diversity of opinion among the courts in recognizing family partnerships, see Moore v. Commissioner, 170 Fed. (2d) 191 (CCA-4, November, 1948) and cases therein cited, each case still stands upon its own particular facts. Based thereon, we affirm respondent's determination that no partnership can be recognized for tax purposes in these cases. As an alternative, petitioners contend that by November 1, 1941, Kate P. Tomlinson had contributed capital *325 to the alleged partnership in the total sum of $47,406.82 and that she is entitled to a fair return upon this investment. They rely upon Abe Schreiber, et al., 6 T.C. 707, affirmed 160 Fed. (2d) 108. The first point decided in the cited case was that the wives of the two partners did not become partners in the business so as to be recognized for tax purposes. The second point decided in the Schreiber case involved the taxation of rental income of the wives to the husbands. The facts show that the wives took their distributive shares of the partnership income, one-quarter each, and invested it as tenants in common in a piece of improved realty which they remodeled for use by the partnership. The wives were doing business under the trade name of B & S Realty Company. The partnership rented the property from the B & S Realty Company at an annual rental of $3,600. The Commissioner held that the rental income was income of the husbands and taxed each with one-half of the B & S Realty Company income. We held that "the income from property owned by the wives, though purchased with money held income to their husbands, was not income to the husbands," 6 T.C. 714. *326 Petitioners' alternative contention rests on the second issue decided in the Schreiber case. We can not agree that their contention is well founded. Nor do we believe these cases and the Schreiber case are indistinguishable. Kate P. Tomlinson made no independent investment in a separate undertaking. She claims that the undrawn portions of her distributive share at the end of the two-day period in October 1940 and at the end of the fiscal year October 31, 1941, became capital originating with her when she left it in the business. To this she would add the $21,000 paid during the fiscal year 1941 in purchase of a 21/85ths interest in the business. It is difficult to see how petitioners are in any better position on their alternative issue than on the principal issue. If the transfers of undivided interests in the business assets to the wife were insufficient to make her a business partner, and we have so held, then any theory seeking to use her distributive share or a portion thereof as purchase money or as an investment in the business is equally ineffective. The distributive share allocated to Kate and that she seeks to use was Elwyn Tomlinson's and her use of his money will not *327 make her a partner any more than his transfer to her made her a partner in the first instance. The major point is that Kate must provide capital originating with her or render services to the business if she is to be considered a partner. If she reinvests her husband's earnings in the business she can not thereby make herself a partner or claim a return on an alleged investment. It was his income in the beginning and remained so at all times pertinent to these cases. Petitioners' second point is that respondent has no right to change Elwyn W. Tomlinson's method of accounting for his income. The change invoked by respondent grew directly out of his determination that the Capital Automobile Company was not a partnership enterprise for tax purposes. The books and records of the business were kept on a fiscal year basis ending October 31st, but petitioners kept no individual books of account. Section 41 of the Code provides that if a taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. It is a fact of record that petitioners reported their income on a calendar year basis. In the belief that they had created *328 a recognizable partnership for tax purposes, petitioners followed the provisions of section 188 of the Code in reporting their distributive shares of partnership income. That section provides that the partner shall report partnership income, where the taxable year of the partnership differs from his taxable year, as his income for the taxable year in which the partnership's taxable year ends. Accordingly, in filing their joint return for 1940, petitioners omitted income for November and December, 1940, in the total amount of $41,160.59, for the reason that such months were the first two months in the alleged partnership's first taxable year, which ended October 31, 1941. If the new company is not to be recognized as a partnership for tax purposes, and we have so held, then the provisions of section 188 have no application and Code section 41 will apply. Under the present facts and law, and in view of our holding on the first point, respondent must adjust the income reported on a partnership basis to the individual calendar year basis used by Tomlinson, and we so hold. The other points urged upon us by the parties become irrelevant under this holding. The last question for decision *329 is whether the statute of limitations operates to bar the deficiency determined by respondent for the year 1940. Section 275 (a) of the Code fixes the period of limitation upon assessment and collection of income taxes as three years after the return was filed. Section 275 (c) provides that if the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per cent of the gross income stated on the return, then the period of limitation is five years. Our findings show that more than three years and less than five years elapsed between the filing of petitioners' joint return for 1940 and the mailing of the notice of deficiency. In other words, assessment and collection of the deficiency for 1940 is barred if section 275 (a) applies but is not barred if section 275 (c) applies. There can be no doubt that income for November and December, 1940, exceeded one-fourth of the gross income reported by petitioners on their 1940 joint return. The reported gross income was in excess of $55,000; the omitted two-month total is in excess of $41,000. In so far as the percentage requirements of section 275 (c) are concerned, the five-year period applies instead *330 of the three-year period set forth by section 275 (a). The petitioners' contention that the $41,160.59 is not properly includible in petitioners' 1940 joint return, goes once again to the requirements of section 188 and their contention that they properly reported income in accordance therewith. They cite the Ways and Means Committee Report (No. 704, 73rd Cong., 2nd Sess., p. 35) in support of their contention that section 275 (c) was intended to cover only exceptional items of unreported income of which the respondent had no notice. From this petitioners argue that respondent was fully advised by partnership and individual returns with respect to the amount involved and that he seeks to apply section 275 (c) by juggling amounts which had been fully disclosed. Petitioners contend that by the trick of reallocating amounts of income duly reported respondent seeks to thrust aside the statutory bar imposed by section 275 (a). The entire argument made by petitioners on this and the other issues presented revolves around the question of whether a partnership was created which can be recognized for tax purposes. If so, and if the partnership had a fiscal year ending October 31, as they *331 contend, then the November and December, 1940, partnership income would be properly reported by petitioners on their 1941 calendar year returns. But since we could find no real partnership existing between petitioners for tax purposes, we approved respondent's determination. On this issue also we must approve his determination, for, like the preceding issues, it is grounded upon the existence of a business partnership that can not be recognized tax-wise. And we might add that but for the original reallocation of his income by Tomlinson among his family for his own tax advantage, there would have been no necessity for respondent's so-called "trick of a reallocation". We agree with respondent's determination that section 275 (c) applies. The deficiencies should be recomputed in accordance with the concession made by respondent and the foregoing opinion. Decisions will be entered under Rule 50. Footnotes
1. The face of the certificate carries the following statement: "Class B Stock, 800 shares $100 Par Value Each." Neither party mentions the discrepancy between the authorized Class B stock and the amount of stock issued. We note the discrepancy only for the purpose of clarity in this report.↩
3. See e.g. Croft v. Commissioner, TC No. 1432 3 TCM 1064↩, decided February 9, 1944.