William E. Milenz v. Commissioner.
Milenz v. Commissioner
Docket Nos. 20458, 21592.
United States Tax Court
1950 Tax Ct. Memo LEXIS 305; 9 T.C.M. (CCH) 22; T.C.M. (RIA) 50012; January 11, 1950
*305 The petitioner and his wife operated a wholesale beer distributing business known as Central Products. They contributed capital from their joint savings. The wife at all times performed valuable services in managing the internal affairs of the business. No written agreement existed. The respondent taxed the wife's one-half share of the partnership income to the petitioner for 1944 and 1945. Held, parties in good faith and acting with a business purpose intended to join together as partners in the present conduct of the enterprise and that petitioner's wife should be recognized as a partner in Central Products during the taxable years. Frank H. Boyer, Esq., and John C. Evans, Esq., for the petitioner. Thomas V. Lefevre, Esq., for the respondent. *306 VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioner's income tax liabilities as follows: Docket No.
Year
Amount
20458
1944
$5,658.56
21592
1945
9,507.58
The sole issue is whether or not Adah L. Milenz should be recognized in the taxable years as a partner with her husband, the petitioner, in the business conducted under the name of Central Products. In the notice of deficiency the respondent made several minor adjustments in partnership income which are not contested by the petitioner and are, therefore, not in issue. The case was submitted upon stipulation of facts, exhibits, oral testimony and a deposition. The facts stipulated are so found. Other facts are found from the evidence. Findings of Fact The petitioner, William E. Milenz, and his wife, Adah L. Milenz, were married in March 1922. At the time of his marriage the petitioner was employed as a machinist. His wife had worked as a clerk since her graduation from high school in 1916. She continued to work in a similar capacity after her marriage. From 1922 until 1929 the petitioner was employed in factories in Michigan *307 as a machinist and his wife continued to work as a clerk in various local offices. In April, 1929, the petitioner decided to start a malt distributing business in Grand Rapids. This lasted only four months. Then the petitioner went to work for a manufacturer of liquid malt as a driver and salesman. In October, 1932, the petitioner formed a partnership known as Central Products with Ralph W. Wilkins selling liquid malt. Later the partnership acted as a beer distributorship. When the petitioner entered into the partnership with Wilkins, he and his wife had saved about $700 which they kept in a joint account. This $700 was used by petitioner to finance his partnership venture. The petitioner's wife agreed that she would do the office work of the partnership. She drew no pay at this time. From 1933 to 1938 she was alone in the office except for occasional clerical help. She managed the internal affairs of the business. After 1938 she was less active in the business but would assist in the management after regular business hours. In 1941 the beer manufacturing companies threatened to withdraw the franchises held by Central Products unless the sales of that company increased. The business *308 until then had not been productive of sufficient income to satisfy the needs of the Milenz and Wilkins families. In order to increase their income, the petitioner and his wife decided to buy Wilkins' share of the partnership. The beer manufacturers agreed that they would not withdraw their franchises but would wait and see how the business fared without Wilkins and under the management of the petitioner and his wife. This agreement was reached on the basis of the representation that Adah L. Milenz would be a partner in the business. Pursuant to their plan to purchase Wilkins' share, the petitioner and his wife borrowed $3,500 from a company of which Casper Haehnle was the president. Haehnle was also president of one of the beer companies with which Central Products did business. Haehnle understood that Adah L. Milenz would be a partner in the new arrangement and relied on this fact in making the loan. The petitioner and his wife executed six interest bearing notes for a total of $3,500. The notes were paid during the following year. In March 1941, Wilkins executed a bill of sale of his interest in Central Products to the petitioner. He was paid $5,003.05 in cash, representing his *309 share of the book value of the business, out of the proceeds of the loan secured by the petitioner and his wife and $1,503.05 drawn from the petitioner's share of the business. In 1941 a certified public accountant was requested to make an audit of the books of the partnership in order to arrive at the book value of the business as a basis for the sale by Wilkins of his interest. After completion of this audit, the petitioner asked the accountant if the "Assumed Name Certificate" required by State law could be signed by both the petitioner and his wife. The accountant advised the petitioner that under the Michigan statute there could not be a partnership between husband and wife and that all papers concerning such a partnership would have to be made out in the name of the husband. On March 11, 1941, two certificates were filed with the County Clerk of Ingham County, Michigan. The first gave notice of the dissolution of the Wilkins-Milenz partnership doing business as "Central Products" and the second gave notice of the formation of a new business under the same name. This latter certificate, in consonance with the accountant's advice, was signed only by the petitioner. On March 12, 1941, petitioner *310 and his wife executed a bank signature card covering a contract of deposit with the Bank of Lansing for a commercial account carried in the name of "Central Products." In April, 1941, an application for a Michigan sales tax license was filed for Central Products. This application listed the petitioner as the owner. Wholesale beer and wine distributor's licenses were issued to Central Products by the Michigan Liquor Control Commission listing William E. Milenz as individual owner from May, 1941, to January 31, 1945. From January 31, 1945 to September 6, 1946, this license was issued to William E. Milenz and Adah L. Milenz in a partnership doing business as Central Products. During the period from May 19, 1933, to February 28, 1941, inclusive, proprietorship accounts were maintained on the books of Central Products for Ralph B. Wilkins and William E. Milenz. During the period from March 1, 1941, to December 31, 1945, a proprietorship account was maintained on the books of Central Products in the name of William E. Milenz. No proprietorship account was maintained on the books of account of Central Products in the name of Adah L. Milenz during the period from March 1, 1941, to December 31, 1945. *311 On January 18, 1945, the petitioner executed and filed with the Clerk of Ingham County, Michigan, a notice of the dissolution of the business conducted under the assumed name of "Central Products." On the same day the petitioner and his wife executed a new certificate listing both their names as persons conducting business under the assumed name of "Central Products." The social security returns of the business from April 1, 1941, to December 31, 1944, listed the business as a sole proprietorship. The returns for the period January 1, 1945, to August 1, 1946, indicated the business was conducted as a partnership. When Wilkins sold out his interest in the partnership, Adah L. Milenz resumed her work in the business on full time basis. She was in full charge of the office. She kept all the records of the business, prepared the financial statements, and directed occasional office help. The petitioner did not direct the office help, but left the management of such affairs to his wife. She arranged the route schedules of the truck drivers and checked their records when they returned from the day's deliveries. She often remained after regular business hours to finish this work because *312 often the drivers were late in returning. In 1944, the business had increased in volume and she hired and trained a man to act as general manager. She took orders over the telephone for beer from the retailers and she represented the business in this respect. She entertained the families of the customers on occasion and did everything in the business that was possible for a woman to do. The petitioner and his wife had no written agreement or articles of partnership but both of them intended and considered her to be a partner in the business. The people with whom she dealt considered her to be a partner and to have an equal authority in the business with the petitioner. The representatives of the breweries considered Adah L. Milenz a partner in the business and they relied on that fact in extending the oral franchise to the petitioner and his wife. These brewery representatives stated that they believed her to be the driving force behind the partnership and that she was better acquainted with the problems of managing the business than was the petitioner. During the war the shortage of beer necessitated a self-imposed system of rationing. It was the opinion of the petitioner's wife *313 that such stocks of beer as the company received should be allotted on the basis of the prior sales. She prevailed in this opinion despite the urging of the petitioner and some of the salesmen to allot to their older customers a disproportionate share of the available stock. The certified public accountant prepared a 1941 income tax return for the petitioner. He incorrectly advised the petitioner that, because of the Michigan statute, the petitioner and his wife could not file a partnership return. He later learned differently and when he prepared the 1942 income tax return for the petitioner he knew then that a partnership return could be filed. Through a mistake in his office, the accountant failed to notice that such partnership return had not been filed for 1942. He stated that when he discovered that a partnership return had not been filed for 1941 or 1942 he did not file amended returns for those years "because '42 being a forgiveness year, that the tax involved would be so insignificant, that it wasn't important under my consideration." The accountant prepared partnership returns filed for 1943. An employee in his office entered January 1, 1943, on that return as the date *314 of the organization of the partnership. The employere arbitrarily chose that date, assuming that since this was the first partnership return prepared for Central Products, that the agreement was made at the beginning of that year. The accountant continued to prepare the annual financial reports and income tax returns for the business. After 1941 in his relations with Central Products, the accountant dealt only with Adah L. Milenz. In January, 1942, the petitioner became ill and was ordered by his doctors to take a complete rest. He vacationed in Florida from January, 1942, to April, 1942. When petitioner returned from Florida he was not as active in the business as formerly. He discontinued driving trucks and spent his time calling on customers. While the petitioner was in Florida his wife was in complete charge of the business. The petitioner and his wife always considered that their income and property were jointly owned. There had never been a physical division of such property as either possessed. From time to time they bought real estate and bonds which were placed in their joint names. Until 1946 their only bank account was the business account maintained by Central Products. *315 In July, 1946, the business known as Central Products was discontinued and succeeded by a corporation, Central Beer and Wine Company, Incorporated. The capital stock of this corporation was equally divided between the petitioner and his wife. Partnership returns for Central Products were filed reporting income of $25,472.62 and $35,770.66 for 1944 and 1945, respectively, as having been equally divided between petitioner and his wife - they, in turn, reporting such distributions as income on their individual tax returns. The Commissioner determined that all of the net profits of Central Products for the said years were taxable to the petitioner. In so taxing this income, the Commissioner allowed a business expense deduction of $2,400 as reasonable compensation for the services performed by Adah L. Milenz for each of the taxable years. Opinion VAN FOSSAN, Judge: These consolidated proceedings present one issue which is a question of fact. That issue is whether or not Adah L. Milenz was a partner with her husband, the petitioner, in the taxable years 1944 and 1945. The income in question is that derived from a wholesale beer distributing business known as Central Products. This *316 income was equally divided between the petitioner and his wife in the partnership returns filed for the taxable years. The respondent determined that no partnership existed and that the entire net income of that business should be taxed to the petitioner, under the provisions of section 22 (a) of the Internal Revenue Code. In so taxing the income of the business, the respondent allows $2,400 to the petitioner's wife as reasonable allowance for her services for each year. The correctness of the respondent's determination depends upon whether or not the parties, in good faith and acting with a business purpose, intended to join together as partners in the present conduct of the enterprise. Commissioner v. Tower, 327 U.S. 280; Commissioner v. Culbertson, 337 U.S. 733. The petitioner's wife continued to work after their marriage in 1922. They pooled their savings so that by 1932 they $700had. In that year the petitioner used these savings to form a partnership with Wilkins to distribute malt and, later, beer. The petitioner's wife took care of the office work of this partnership but did not consider herself a partner at that time, - *317 rather she considered that she was working with her husband in order to benefit the business and thereby further his interest. The business as it was then conducted was not productive of sufficient income to meet the needs of the families of both partners. The petitioner and his wife decided to buy out the interest of the petitioner's co-partner and thereby consolidate the business within the petitioner's family. Up to that time the petitioner's wife had made such a favorable impression on the beer manufacturers that they were willing to extend their franchises to the new arrangement of the petitioner and his wife only on the assurance that the wife would remain active in the business. One of the beer manufacturers secured a loan for petitioner and his wife so that they could buy out the petitioner's partner, Wilkins. This loan was made with express reliance on the wife's signature in addition to that of the petitioner. In reorganizing the business in 1941, petitioner and his wife intended to create a new partnership consisting of petitioner and his wife. Petitioner's wife had acquired a reputation for business ability and was considered by their business acquaintances to be more *318 skilled in business matters than was petitioner. The petitioner took care of the promotional work while his wife handled the internal management of the business. She conferred with the sales representatives of breweries whose products they distributed, took orders from the retailers, supervised the deliverymen and their records, kept the books, and, on occasion, entertained the customers and their families. In the light of the clear intention of the parties, as expressed between them at the time, and of the services admitted by respondent to have been rendered by the wife, it is not necessary, in order to find that a partnership existed, that we find that she made a capital contribution to the business. It is well to note, however, that the investments in the partnership were made from savings accumulated jointly between petitioner and his wife and further that the notes for $3,500, the proceeds of which were used to finance in part the purchase of the remaining share of the business, were signed by the wife as co-make. [1]
*319 Acting on the advice of a certified public accountant, petitioner was persuaded in 1941 to abandon his plan to list himself and his wife as partners when filing certain certificates with State authorities. In Willis B. Anderson, 6 T.C. 956, the existence of the partnership was not disclosed except to his bookkeeper. There we said that "this conduct was explained by the fact that petitioner had been advised by a lawyer that the laws of Michigan did not permit a contract of general partnership between husband and wife. Furthermore, it has been decided in numerous cases that a bona fide partnership between husband and wife will be recognized under the Federal revenue laws despite provisions of state laws to the contrary." Pursuant to the advice of this same certified public accountant there were no partnership returns filed for 1941 or 1942. In the latter year the failure to file was due to an oversight in the office of the accountant. Partnership returns were filed for 1943, 1944, and 1945. On the record made, it is abundantly clear that the true intent of the parties, acting in good faith and with a business purpose, was to join together as partners in 1941 in the *320 conduct of the business. The existence of this intent is fully corroborated by the subsequent conduct of the parties. All contrary inferences of fact are satisfactorily explained. We hold, therefore, that Adah L. Milenz should be considered a partner in Central Products during 1944 and 1945 and that her share of the partnership income during those years should not be taxed to the petitioner. Decision will be entered under Rule 50. Footnotes
1. We considered the problem of a wife's capital contribution from joint funds and proceeds of a joint loan in N. B. Drew, 12 T.C. 5↩. We said there that "It [the business] grew from the joint efforts of petitioner and his wife in the use of a joint loan and jointly held funds * * *. Such evidence warrants the conclusion that she did make a contribution, and we have so found."